LITTLE DARLING CORPORATION and Jack Cirino, Appellants,

v.

ALD, INC., Cook Machinery Company Division, Appellee.

No. 19440.

Court of Civil Appeals of Texas, Dallas.

May 3, 1978.

Lee M. Simpson, Akin, Gump, Hauer & Feld, Dallas, for appellants.

Schuyler B. Marshall, David E. Morrison, Thompson, Knight, Simmons & Bullion, Dallas, for appellee.

GUITTARD, Chief Justice.

This suit for breach of contract was tried to a jury in the absence of defendants after defendants' counsel had been permitted to withdraw. The jury found damages in the amount of $427,700 and the court rendered judgment accordingly. Defendants then employed new counsel, who filed a motion for new trial. After that motion was overruled, defendants perfected this appeal, contending that the trial court erred in denying defendants a continuance and that the evidence was factually insufficient to support the finding of damages. We hold that denial of the continuance was within the trial court's discretion, but that the evidence is insufficient to support the finding of damages. Accordingly, we reverse and remand for a new trial.

We need not discuss denial of the continuance, since we reverse for insufficiency of evidence. The suit was brought on a contract in the form of a letter in which plaintiff Cook Machinery Company, a division of ALD, Inc., agreed to manufacture and deliver to defendants, Little Darling Corporation and Jack Cirino, seventy-five automatic car-wash units a year for five years. The units to be delivered were of four different types, and the price specified was "cost plus 25%." The contract defines "cost" as "actual material costs and normal burden factor as established by Cook." The contract specifies cost figures for the four types of units listed, ranging from $2,937.37 for the least expensive type to $5,278.21 for the most

expensive type. Thus, the twenty-five percent markup provided in the contract ranges from $735.33 to $1,319.57. The contract provides that the price "will be reviewed on a six-month basis, with 30-day notice of any change in your price based on cost increase or reduction." It also provides that the cost figure of the least expensive unit is not final, but is based on figures prepared by the defendants, and "will be changed as soon as we can establish a cost here."

The only testimony at the trial was that of plaintiff's vice president and treasurer. He said that defendants took only 46 of the 375 units they were obligated to take, leaving 329 not taken, and that plaintiff's "gross profit" on each of the units not taken would have been $1,300 each, for a total of $427,700. He testified further that this was the amount of damages that would be necessary to place plaintiffs "in a position as it would occupy had the defendants not defaulted in their obligation to purchase a minimum of 375 units," and that if material costs had risen, as they did, plaintiff would have had the right to increase the price, and the twenty-five percent would have amounted to more.

 We conclude that this evidence is factually insufficient to support the amount of damages awarded. The measure of damages for breach of contract is the amount necessary to place plaintiffs in a financial position equivalent to that in which it would have had if the contract had been fully performed by both parties. *R. G. McClung Cotton Co., Inc. v. Cotton Concentration Co.,* 479 S.W.2d 733, 738 (Tex.Civ. App.—Dallas 1972, writ ref'd n. r. e.); *J. C. Engelman, Inc. v. Sanders Nursery Co., Inc.,* 140 S.W.2d 500, 508 (Tex.Civ.App.—El Paso 1940, writ ref'd). Thus, in the case of a breach by the buyer of a contract of sale, the seller's measure is net loss of profits, that is, the contract price less the actual cost of his required performance. *Purvis & Bertram v. Shaw,* 164 S.W.2d 416, 418 (Tex. Civ.App.—Fort Worth 1942, writ ref'd). If the contract has been partly performed, the measure is the balance of the contract price, less the seller's cost of completing his required performance. *See V. R. Wattinger Co. v. Moore,* 475 S.W.2d 327, 329 (Tex.Civ. App.—Austin 1972, no writ).

 Although an award of damages may be based on estimates, the amount should be established with that degree of certainty reasonably to be expected under the circumstances of the case. *See McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710, 712 (1943). Since this contract does not specify a fixed price after the first six months, but permits the seller to adjust the price on the basis of the cost, to which a markup of twenty-five percent is to be added, the amount of the cost must be shown with reasonable certainty. Defendants contend that the requirement has not been met. They insist that the testimony of $1,300 "gross profit" on each unit does not support the finding of damages because the proper measure of plaintiff's loss is the net profit that plaintiff would have realized if the contract had been performed. Plaintiff admits that the proper measure is net profit rather than gross profit, but insists that the testimony as a whole indicates that the witness did not use the term "gross profit" in a technical sense, but rather to refer to the markup of twenty-five percent over the cost specified in the contract, which, plaintiff says, was actually a net-profit figure.

We conclude that the schedule of costs in the contract does not support the figure of $1,300 per unit as the actual net profit lost by plaintiff. In the first place, we cannot determine whether the cost figures specified in the contract include all the costs that must be considered for the purpose of determining legal damages. "Cost" is defined in the contract as "actual material costs and normal burden factor as established by Cook." The meaning of "normal burden factor" does not appear in the evidence. We cannot determine whether it includes the actual costs of all the labor required for production and delivery of the units, as well as a reasonable allocation of the supervision, fuel, accounting, and other expenses that would have been incurred if a total of 375 units had been produced. If

some of these costs were not included in the "normal burden factor," then the profit on each unit would have been something less than twenty-five percent of the actual cost. The probability that other expenses would have been incurred is indicated by the witness's use of the term "gross profit" rather than "net profit".

In the second place, even if we should accept the schedule of costs in the contract as actual costs for the purpose of determining damages in the absence of contrary evidence, that schedule does not support the figure of $1,300 per unit as the anticipated net profit on all of the 375 units defendant was obligated to take under the contract. The witness did not explain where he got this figure, but it seems likely that it is an approximation of the markup specified in the contract for the most expensive unit which, by computation, amounts to $1,329. Plaintiff apparently adopts this approach, since it argues that it only seeks recovery of the markup provided in the contract, and it asserts that it was actually entitled to more than the $1,300 per unit for which it sued because the contract authorizes it to redetermine the costs at intervals of six months, with a corresponding adjustment in the markup, and the evidence shows that actual costs had risen.

This argument overlooks the circumstance that the contract did not obligate the defendants to order the most expensive units. Defendants could have satisfied their obligation under the contract by ordering the least expensive units, on which the markup, as shown by the contract, was only $735.33. Admittedly, the contract gives plaintiff the right to redetermine the initial costs of these units, as well as to redetermine the costs of all the units at intervals of six months, but no redetermined cost figure on the least expensive units is in evidence. We cannot accept the witnesses' testimony of $1,300 per unit "gross profit" on 329 units, which is apparently based on the contract cost figure for the most-expensive units, as applying to the least-expensive units. Consequently, there is no evidence in the record from which the jury could have determined the difference between the price the defendants would have paid for the units they were obligated to buy and plaintiff's actual cost of producing such units.

Neither is the verdict supported by the answer of the witness, in reply to a leading question, that the sum of $427,700 was necessary to place plaintiff in the same position it would have occupied if defendant had not defaulted. This conclusion is apparently based on his other testimony and throws no light on the uncertainties inherent in the terms "gross profit", and "normal burden factor." Neither does it provide any explanation for the apparent error of the witness in basing his testimony on the anticipated markup for the most expensive units rather than the least expensive units.

■ For the reasons stated, we hold that the evidence is factually insufficient to support the finding of damages. Since the judgment must be reversed for this reason, we must determine whether to remand for determination of damages only or to remand generally for a new trial. This question is controlled by rule 434, Tex.R.Civ.P., which in part provides:

> [I]f it appear to the court that the error affects a part only of the matter in controversy and that such part is clearly separable without unfairness to the parties, the judgment shall only be reversed and a new trial ordered as to that part affected by such error provided that a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested.

Here the amount of damages, as found by the jury, is unliquidated, since the amount cannot be determined from the allegations of the petition and the terms of the contract. *Freeman v. Leasing Associates, Inc.*, 503 S.W.2d 406 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ). Defendants' answer contested the issue of liability as well as the damages. Consequently, we must remand the whole case for a new trial.

Reversed and remanded.