**L. C. BUTLER, Appellant,**

v.

**JOSEPH'S WINE SHOP, INC., Appellee.**

No. B2896.

Court of Appeals of Texas, Houston (14th Dist.).

May 6, 1982.

Shawn Casey; Casey, McStay, Linder & Miller, Houston, for appellant.

Julian Clark Martin, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and SAM ROBERTSON, JJ.

SAM ROBERTSON, Justice.

Appellant brings this appeal from a judgment in favor of appellee, plaintiff in the court below. The original suit was filed against appellant individually, alleging breach of contract, conversion, fraud, willful tortious acts, and violation of the Texas Deceptive Trade Practices Act. Subsequently, appellee amended his petition to bring suit additionally against The Penalty Box, Inc. After trial to a jury, the court entered judgment against the individual appellant for actual damages, treble damages, punitive damages and attorneys' fees.

In summary, the undisputed facts are as follows. In March of 1976, appellee sold and delivered sandwiches and party trays to a business establishment called "Cyrano's"[1] at the request of the then manager, Michael Perine. The total outstanding charge for these goods was shown to be $1,125.25. Additionally, the same manager negotiated to sell certain kitchen equipment to appellee

for $2,750.00. Appellee wrote a check for $2,250.00 payable to "Cyrano's" and allowed a $500 credit against the amount due for the sandwiches and other foods. The check was delivered to the manager, Perine, and subsequently was deposited to "Cyrano's" account; however, delivery of the paid for equipment was impossible due to its size. Appellant later sold the equipment to another party.

Appellee sought the return of his $2,250.00 and payment of the past due $1,125.25 from the owner, L. C. Butler, without success and ultimately brought the suit on which this appeal is based.

■ In his first point of error, appellant contends the trial court erred in entering judgment against a corporate shareholder in the absence of evidence which pierces the corporate veil. As we see it, the real issue is whether the corporate veil was ever drawn. The suit was originally filed against L. C. Butler, individually. Even when The Penalty Box, Inc. was later added as a defendant, the suit against Butler was as an individual. Appellee's pleadings do not attempt to establish Butler's personal liability as alter ego of some corporation. Instead, the pleadings assert his liability, as owner of Cyrano's, for debts incurred by his agent and manager, Perine.

■ In this circumstance, if Butler wished to argue that he was not liable in the capacity in which he was sued, he was charged with the duty of raising that defense in a verified pleading in accordance with Tex.R.Civ.P. 93(c). The handwritten, unverified, second amended answer filed on the day trial began does not comply with this rule. The mere allegation that "at all times material Defendant L. C. Butler was not acting in his individual capacity in all his dealings with the Plaintiff and affirmatively so defends" does not, unverified, raise the question of corporate status. Subsequent to oral argument, appellant has filed a supplemental brief which contends that

1. During a brief period, the business was also called "Chapter XI," but this name change is

not material to our discussion.

because his First Amended Original Answer is incorporated by reference into the Second Amended Answer discussed above, the affirmative defense required to be sworn under Tex.R.Civ.P. 93 was, after all, properly before the court. We have examined the First Amended Answer and find that while it is sworn to by appellant, it does not specifically raise the affirmative defense that appellant is not liable in the capacity in which he is sued. Other than a denial that appellant was "doing business" as Cyrano's, the answer merely denies that appellant ever authorized the acts made the basis of this suit. These are not sufficient to raise an issue as to appellant's capacity as an officer of a corporation. Moreover, the affidavit of appellant appended to his First Amended Answer cannot be extended to encompass a subsequently filed Second Amended Answer.

▆ Even if the question of corporate status were raised, appellant offered no proof at trial of a corporate charter or of his relation to any such corporation other than his own testimony, and even that was equivocal on whether the alleged corporation had been dissolved, was inactive, or was even alive.

Although a different fact situation existed in *Gray v. West*, 608 S.W.2d 771 (Tex. Civ.App.—Amarillo 1980, writ ref'd n. r. e.), we find sufficient parallels to apply the language below to the case before us today.

> West sued Gray individually on the theory that Gray participated individually in the business transaction in question. West was not attempting to establish Gray's personal liability as alter ego of G & R Distributors. In that posture, Gray's contention that he acted only through the corporation and not individually is an affirmative defense under Rule 93, Tex.R. Civ.P. His unsuccessful reliance on the defense did not place any burden on West to pierce a corporate veil because the corporate veil was never drawn. *Id.* at 778.

Accordingly, we overrule appellant's first point of error insofar as it complains of the entry of judgment against appellant as an individual, in the absence of evidence piercing the corporate veil.

▆ Additionally, under this point of error, appellant asserts no evidence and insufficient evidence to support special issues one through ten. Each of these issues seeks to hold appellant liable for the transactions sued upon through his own actions or those of his agent. The court's instruction on agency is as follows:

> [A]n agent's or employee's authority is presumed to be co-extensive with the business entrusted to his care.
>
> ... even though an agent or employee may not have had actual authority to perform certain activities, a principal or employer is nevertheless bound by the actions of the agent or employee under the doctrine of apparent authority if the principal or employer conducted himself in such a manner as would lead a reasonably prudent person, using diligence and discretion, to suppose that the agent or employee has the authority he purports to exercise.
>
> ... an agreement may be ratified by a principal or an employer, though he had no knowledge originally of the unauthorized act of his agent or employee, if he retained the benefits of the transaction after acquiring full knowledge thereof.

We have carefully reviewed the record below and find sufficient evidence to support the submission of these special issues based on agency. Since the corporate veil was never properly raised, appellant's arguments that no evidence was introduced binding the corporate defendant is inappropriate. Nor do we deal here with the Statute of Frauds argument based on Tex.Bus. & Com. Code Ann. § 2.201(a) (Vernon 1968), since the writing required therein may be signed by an agent of the party against whom enforcement is sought. Appellant's first point of error is, therefore, overruled.

▆ In his second point of error, appellant contends the trial court erred in entering judgment against appellant based on fraud and argues that there is no evidence to support the three special issues on fraud

or, alternatively, that the evidence is insufficient. Again, appellant assumes corporate protection which we have already overruled. Removing that part of the argument, we are faced with appellant's contention that since he did not personally meet appellee until sometime after the two business transactions on which this suit is based, he cannot be held responsible. We note only that where an agency exists, there is no requirement that a principal have made representations directly to the third party who relied thereon to his detriment. Because there is sufficient evidence under the agency theory to support the submission of these issues, appellant's second point of error is overruled.

 In his third point of error, appellant argues that the trial court erred in submitting special issue No. 14, the basis of appellee's judgment under the Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. § 17.50 (Vernon Supp.1982). Appellant objected at trial to the issue as "too broad" and argued the issue should "state what unconscionable acts" the defendant had allegedly done. Tex.R.Civ.P. 277 clearly states,

> "It shall be discretionary with the court whether to submit separate questions with respect to each element of a case or to submit issues broadly. It shall not be objectionable that a question is general or includes a combination of elements or issues."

Moreover, our Supreme Court has said:
> An objection to an issue which states that it is global ... is no good. While an issue no longer need be submitted "separately and distinctly," an objection to a charge must be made "distinctly" and "specifically." *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931 (Tex.1980).

Accordingly, appellant's third point of error is overruled.

 In his fourth point of error, appellant contends error in the entry of judgment based on the deceptive trade practices act stating there is no evidence or, alternatively, insufficient evidence to support special issues fourteen and fifteen. To review a no evidence point, we consider the evidence and inferences supporting a jury finding and reject that which is contrary. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974). To review an insufficient evidence point, we review and consider all of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Special issue fourteen inquired whether the jury found "transactions" between appellant or his agents and appellee in which appellee was a "consumer" and in which appellant or his agents "engaged in an unconscionable action or course of action which adversely affected" appellee. The phrase "unconscionable action or course of action" was defined as "an act or practice which, to a person's detriment: (a) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (b) results in a gross disparity between the value received and the consideration paid, in a transaction involving transfer of consideration." Special issue fifteen, conditioned on an affirmative finding to special issue fourteen, inquired as to the amount of actual damages sustained by appellee as a result of the unconscionable action or course of action.

The jury heard testimony from appellee and appellant's manager that the latter had, at appellant's request and with his consent, negotiated the sale of certain fixtures and equipment to appellee and that appellee had tendered a check in the amount of $2,250.00. The check was subsequently deposited to "Cyrano's" account. Appellant later sold the equipment and fixtures to another party and initially denied having received the check. Appellee testified that appellant acknowledged the debt and promised to pay but then postponed payment and ignored him. When appellant finally acknowledged receipt of the check, he still refused to pay appellee.

 In our opinion, the jury could reasonably have concluded that the actions or course of action pursued by appellant were unconscionable, resulting in a gross dispari-

ty between the value received and the consideration paid. We hold there is some evidence to support the jury's answers to special issues fourteen and fifteen, and, on review of all of the evidence, we find the evidence factually sufficient to support the jury's findings. Appellant's fourth point of error is, therefore, overruled.

■ In his sixth point of error, appellant contends the trial court erred in entry of a judgment for punitive damages, arguing no evidence and insufficient evidence. Again, appellant asserts his personal involvement with appellee was only after the original transactions took place and, again, we note that appellant's liability is not lessened by his having transacted business through an agent. Additionally, the jury instruction defined "recklessly" or "with malice" as "acts of an unconscionable nature, such as malice, fraud, oppression, bad faith, knowledge of a falsity, intention to defraud, conscious indifference or wanton disregard of the rights of others." Since the jury found fraudulent representation by appellant in its answer to special issue eleven, we conclude the evidence which was sufficient there is also sufficient here and overrule appellant's sixth point of error.

In his seventh point of error, appellant asserts the trial court erred in admitting into evidence correspondence between appellant's attorney and the district attorney's office, claiming they are hearsay, prejudicial and designed to inflame the minds of the jury. Appellant cites two cases which deal with admissibility of criminal charges or convictions in a civil case which we do not discuss since there was no attempt to offer evidence of a charge or conviction into evidence. Rather, the questioned letters are in response to inquiries from the Consumer Fraud Division of the District Attorney's Office. They were identified at trial by appellant's attorney as having been written by him on behalf of appellant in response to a complaint filed by appellee.

■ Appellee argues that the letters were not offered to prove the truth of the matters asserted therein and are not, therefore, hearsay. *O'Conner v. National Motor*

*Club of Texas*, 385 S.W.2d 558 (Tex.Civ. App.—Houston 1964, no writ). Further, appellee asserts the letters are admissible to show the state of mind or motives of appellant. *Gabler v. Minnesota Mutual Life Ins. Co.*, 498 S.W.2d 413, 418 (Tex.Civ.App.— Texarkana 1973, no writ). We agree with both arguments. Appellee offered the letters, not to prove the matters asserted therein, but to show the state of mind of appellant. Accordingly, we overrule this seventh point of error.

In his fifth point of error, appellant argues that the trial court erred in awarding both treble damages under the Deceptive Trade Practices Act and punitive damages, citing *Riverside National Bank v. Lewis*, 572 S.W.2d 553 (Tex.Civ.App.—Houston [1st Dist.] 1978) *rev'd and rend'd in part on other grounds*, 603 S.W.2d 169 (Tex.1980). In *Riverside*, the court said:

> § 17.43 of the Deceptive Trade Practices Act states that the remedies provided in that subchapter are in addition to any other procedures or remedies provided for in any other law. We hold that a plaintiff should not, however, recover both exemplary damages and the treble damages provided in the Deceptive Trade Practices Act, *based on the same act*, as that would amount, at least in part, to a double recovery of exemplary damages. (italics added) *Id.*, at 561.

In 1979, the legislature amended this section, specifically disallowing recovery "under both this subchapter and another law of both actual damages and penalties for the same act or practice." Tex.Bus. & Com. Code Ann. § 17.43 (Vernon Supp.1982). Appellee argues that since this specific provision was not in effect until August, 1979, it is not applicable here where the cause of action arose prior to the effective date of the act. However, *Riverside* was decided under the language of the old statute, and we find the court's reasoning persuasive. There the court said,

> "Treble damages effectuate one of two possible purposes. First, mandatory treble damages served as inducements for the consumer to sue where smaller dam-

ages are involved. Second, they serve as exemplary damages to punish the wrong-doer for his misconduct." *Id.*, at 561.

Nevertheless, appellee argues that since each award was based on a different component of the case, he is entitled to both. While we agree that the treble damages are limited to the transaction in which appellee was a consumer, the sale of fixtures and equipment, we do not agree with appellee that "the finding by the jury with respect to exemplary damages is presumed to have been based on the conduct of L. C. Butler with respect to the other component of the transaction .... " In the case before us today, appellee's third amended original petition pleads exemplary damages under two causes of action, tort and fraud; however, no issue was submitted to the jury on the tort theory. Under his cause of action for fraud, appellee pled "misrepresentations concerning the sale of goods to plaintiff." This clearly refers to the sale of equipment and fixtures, the same transaction on which the deceptive trade practices action was based. Under these circumstances, we think *Riverside* controls because appellee seeks to recover both exemplary damages and treble damages *based on the same act.*

■ While it is true where two findings are in irreconcilable conflict, neither can stand, *Pearson v. Doherty*, 143 Tex. 64, 183 S.W.2d 453 (Tex.1944), we do not believe the trial court erred in submitting potentially conflicting issues to the jury on alternative theories of recovery, because until those issues are answered no conflict can exist. Even when conflicting answers are returned by the jury, they will be deemed irreconcilable, and hence fatal, only when one answer would establish a cause of action or defense, while the other would destroy it. *Varela v. Safeway Stores, Inc.*, 550 S.W.2d 357 (Tex.Civ.App.—El Paso 1977, no writ); *Sun Oil Co. v. Massey*, 594 S.W.2d 125 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n. r. e.). Furthermore, it is the duty of the trial court to reconcile apparent conflicts in the jury's findings if this can be reasonably done in light of the pleadings and evidence, the manner in which issues were submitted, and in view of other findings when considered as a whole, *Ingles v. Cohen*, 543 S.W.2d 455 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.); and reviewing courts are required to reconcile the findings if it can be reasonably done. *Hogg v. Washington Nat. Ins. Co.*, 503 S.W.2d 325 (Tex.Civ.App.—Tyler 1973, no writ).

■ In the case before us, the jury's answers to the special issues in question are not irreconcilable, in that they both favor appellee's recovery. Rather, one or the other is barred as a matter of law as allowing double recovery. Thus, if the trial court erred, it was not in submission of the issues but in entry of judgment allowing double recovery. Tex.R.Civ.P. 301 provides that a judgment "shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to *which he may be entitled in law or equity.*" (emphasis added)

Appellee was not entitled to recover both exemplary damages and treble damages for the same act, as we have discussed above, and should have elected, prior to judgment, which recovery he wanted by waiving one of the findings. *Mancillas v. Texas Emp. Ins. Ass'n*, 543 S.W.2d 751 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.); *Hargrove v. Trinity Universal Ins. Co.*, 256 S.W.2d 73 (Tex.1973).

The judgment is therefore excessive and appellee may now make the election as to damages by filing a remittitur in this court within fifteen days of this date in accordance with Tex.R.Civ.P. 440. If such remittitur is so filed, the judgment will be modified and affirmed; if not so filed, then judgment shall be reversed and the cause remanded for new trial.

Reformed and affirmed on condition of remittitur.