CANON, U.S.A., A Corporation,
Appellant,

v.

CARSON MAP COMPANY,
INC., Appellee.

No. 1977 CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 29, 1982.
Rehearing Denied Jan. 13, 1983.

H. Clay McGuffey, Royston, Rayzor, Vickery & Williams, Brownsville, for appellant.

William L. Hubbard, Adams, Graham, Jenkins, Graham & Hamby, Harlingen, for appellee.

Before NYE, C.J., and YOUNG and GONZALEZ, JJ.

## OPINION

YOUNG, Justice.

This is an appeal from a judgment awarding the plaintiff damages in a suit brought under Section 17.50 of the Deceptive Trade Practices-Consumer Protection Act (DTPA).[1]

The case involves the purchase of a Canon NP 5000 copying machine by Carson Map Company, Inc. (Carson) from Walk Office Equipment Company (Walk). These machines are made in Japan and distributed by Canon U.S.A., Inc. (Canon) to United States dealerships for sale to the public.

Carson's principal business is publishing plat books. In the summer of 1978, it was engaged in a project to publish a plat book for the City of San Antonio. This book contained 2300 pages assembled in three volumes. Looking for a method to reduce the cost of mass producing the book, Carson answered a newspaper advertisement in a national newspaper about the Canon NP 5000 copier. A salesman of Walk, Ken Sorensen, called upon Carson and talks began concerning purchase of the machine. Since Walk did not have an NP 5000 in stock, Carson's president, Prescott Lloyd Carson, went to the Canon U.S.A. showroom in Dallas where a representative of Canon demonstrated the machine. In the conversations that led to the purchase of the machine, Carson's president told both Sorensen and the Canon representative how he planned to use the machine. He told them that he needed a machine that would permit printing on both sides of the paper and that would make 40,000 image impressions per month on paper twelve inches wide. According to Carson's president, both representatives represented that the NP 5000 could meet these performance requirements. Induced by these representations, Carson bought the machine.

The machine did not perform as expected. When using it to copy on both sides of the paper, the quality of the copy deteriorated rapidly with the increase in the number of copies made. Carson found the machine could not mass produce its book and as a consequence it was compelled to abandon the San Antonio project. Expert witnesses testified that Carson's experience was predictable because the machine was not designed to copy on both sides of the paper. While the machine is capable of copying on both sides of the paper, the regular use of it in this manner inevitably leads to poor copy quality and machine break down.

Carson sued Walk and Canon alleging that they represented the machine to have

---

1. 1977 Tex.Gen.Laws, Ch. 216, § 5 at 603.

characteristics and uses it did not have,[2] that it relied on those representations in making the purchase, and that as a result of the purchase it suffered monetary losses.

Walk did not appeal. Appellant Canon, in five points of error, complains of jury misconduct and challenges the actual and exemplary damage findings of the jury.

■ In its first point of error, appellant contends there is no evidence that the statements alleged to have been made by a Canon representative were authorized or ratified by the corporation; therefore, the trial court erred in awarding exemplary damages against the corporation. One circumstance under which a corporation may be held liable for exemplary damages is when its agent, at the time of the wrongful act, was employed in a managerial capacity and was acting within the scope of his employment. *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627, 630 (Tex.1967).

■ Carson's president testified that the Canon representative who conducted the copy machine demonstration in Dallas was the "regional service manager." There was also testimony that while "service managers" in the Dallas office normally did not do demonstrations they were authorized to perform this task. We hold that this testimony was sufficient to support a finding that the offending representative was acting in a managerial capacity and within the scope of his employment. In reaching this holding we have viewed the evidence in its most favorable light in support of the finding considering only the evidence and the inferences which support the finding and rejecting the evidence and the inferences which are contrary to the finding. *Burnett v. Motyka,* 610 S.W.2d 735 (Tex.1980). Appellant's first point is overruled.

■ In its third point, the appellant urges the following:

"The trial court erred in failing to sustain Appellant's Motion for Judgment Non Obstante Verdicto asserted against Appellee for the amount of damages found by the jury in response to Special Issue No. 25 because the award of punitive damages ($25,000.00) by the jury is against the overwhelming weight and preponderance of the evidence."

Even though the appellant seems to be complaining of the factual insufficiency of the evidence ("against the overwhelming weight"), we will review this third point as a legal insufficiency of the evidence ("no evidence") complaint. See Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361 (1960). In fact, in the trial court the appellant couched its motion for judgment non obstante verdicto in "no evidence" terms.

As we have noted, appellee's suit arose, in part, from the representation by the appellant that the copier that appellee bought would make two-sided copies. The copier, according to the evidence, failed to satisfactorily perform the two-sided copying function. As a result appellee sought, and the jury awarded in its verdict, exemplary damages against the appellant. We also note that appellee elected to attempt to recover exemplary damage instead of three times the actual damages under the DTPA as it existed at the time the suit arose.

■ We will be guided, therefore, by rules developed by case law, instead of the statutory rules regarding exemplary damages in the DTPA. In *A.L. Carter Lumber Co. v. Saide,* 140 Tex. 523, 168 S.W.2d 629 (Tex.1943), our Supreme Court held that exemplary damages cannot be recovered for a simple breach of contract, unaccompanied by a tort, though brought about capriciously and with malice. See *William B. Roberts, Inc. v. McDrilling Company, Inc.,* 579 S.W.2d 335, 340 (Tex.Civ.App.—Corpus Christi 1979, no writ). The result of the actions of the appellant here is more like a breach of warranty than a breach of contract, but the applicable rules are the same.

■ In the instant case, our review of the evidence reflects that the actions of the appellant lacked the requisite distinct tort aspects necessary as a predicate for the

---

**2.** 1977 Tex.Gen.Laws, Ch. 216, § 3 at 601.

award of exemplary damages. We hold, therefore, that there is no evidence to support the jury's answer to Special Issue No. 25 awarding punitive damages. Appellant's third point is sustained.

■ In point of error two, appellant complains that the trial court erred in overruling its motion for new trial in which it alleged that the jury used the quotient method of arriving at their exemplary damage verdict and that they considered the effect of that verdict. After a hearing the motion was overruled. Four jurors testified on the motion. While their testimony is sufficient to show that at one point during the deliberations each juror wrote a figure on a piece of paper and delivered it to the foreman, the testimony is too meager to show exactly what was done with the figures or that there was any agreement among the jurors that their verdict would be determined by the quotient method. Based upon this evidence the trial judge was entitled to believe that no jury misconduct occurred or, that if it did, it was not material. *Naranjo v. Cull,* 569 S.W.2d 529 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Even if there was jury misconduct, it becomes immaterial because of our holding regarding appellant's third point. Appellant's second point is overruled.

■ Appellant contends in its fifth point that the trial court erred in overruling its motion for mistrial because the actual damage finding (special issue no. 16) against Canon was rendered immaterial by a settlement between Carson and Walk. We are unable to review this point because the alleged settlement has not been made a part of the record. We also note that at the time this motion was presented to the trial court no mention of settlement was urged as a ground for granting the motion. Appellant's fifth point is overruled.

In the fourth point, the appellant urges that the evidence is factually insufficient to support the jury's answer to special issue no. 16 (actual damages). In that issue the jury found that $25,000.00 would "fairly and reasonably compensate Carson for its

actual damages for which Canon's employee's representation was a producing cause." At the suggestion of the trial court, Carson made remittitur of $16,250.00 leaving the actual damage amount at $8,750.00.

■ In that regard, the trial court instructed the jury that "actual damages" includes: "(a) The difference in the fair market value of the copier as delivered and as represented; and (b) The amount of money reasonably and necessarily expended by Carson in attempting to use the copier as a two-sided copier in his business before he knew or reasonably should have known that the copier was not suitable for his intended use." Carson's president (Prescott Lloyd Carson) testified that during the period he was working on the San Antonio plat project he paid out employee wages in the amount of $18,118.71 and that 80% of this amount, or $14,494.96, was wasted because the copier did not perform as expected. Carson also testified that he paid $2,300.00 for preparation of the original map pages in San Antonio from which the copies were to be made and that these originals were not utilized because the copier failed. Testimony was also adduced from which it could be determined that the difference in the fair market value of the copier as delivered and as represented was 40% to 50%. This evidence is factually sufficient to support an award of actual damages in the amount of sufficient to support an award of actual damages in the amount of $8,750.00. Appellant's fourth point is overruled.

All of which brings us to a consideration of appellee's cross-point wherein it complains that the trial court erred in requiring appellee to file a remittitur of $16,250.00 of the actual damages as a condition of denying appellant's motion for new trial. The actual damages against appellant were thereby reduced to $8,750.00. See Rule 328, Tex.R.Civ.P.

■ The correct rule for review by us in passing on the trial court's action in ordering a remittitur is that we should allow the trial court's action to stand unless we are of the opinion that the remittitur, when con-

sidered in the light of the whole record, would render the order of remittitur manifestly unjust and that the trial court abused its discretion by the order. *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835 (Tex. 1959).

As we have noted, the jury by its answer to special issue no. 6 found $8,750.00 as actual damages against defendant Walk (not a party to this appeal). The evidence in support of the jury's finding of actual damages against Walk was substantially similar to the evidence in support of the finding ($25,000.00) of actual damages against appellant Canon. So, what the trial court apparently did in ordering the remittitur was to make the actual damages the same against each defendant. We hold, in light of the whole record, that the remittitur action of the trial court was not manifestly unjust nor did the trial court abuse its discretion. Appellee's cross-point is overruled.

That part of the judgment of the trial court awarding punitive damages against appellant Canon is reversed and judgment is here rendered that appellee Carson take nothing on its claim of punitive damages against appellant Canon. The remainder of the trial court's judgment is affirmed. One-half of the costs of this appeal are taxed against the appellant and one-half against the appellee.