**CACTUS UTILITY COMPANY and Hoyte Gentry, Appellants,**

**v.**

**Lew G. LARSON and Larson Plumbing & Utility Company, Appellees.**

**No. 13–85–139–CV.**

Court of Appeals of Texas, Corpus Christi.

March 27, 1986.

Rehearing Denied May 8, 1986.

Second Rehearing Overruled May 29, 1986.

Richard J. Hatch, Corpus Christi, for appellants.

James R. Harris, Corpus Christi, for appellees.

Before DORSEY and KENNEDY, JJ., and NYE, C.J.

## OPINION

DORSEY, Justice.

This is a suit on a contract brought by Lew G. Larson and Larson Plumbing & Utility Company as plaintiffs against Cactus Utility Company and Hoyte Gentry, for the division of assets of Cactus Utility Company, a corporation in which both Lew G. Larson and Hoyte Gentry were stockholders. Based on the jury's verdict, judgment was entered for the plaintiffs (Larson) against both defendants (Cactus and Gentry) for $787,053.00 of the remaining assets of Cactus Utility Co., $30,000.00 accounting fees, and various sums for attorney's fees for the trial and appeal of this judgment. Defendants' Motion for New Trial was overruled by the trial court "provided the Plaintiffs file a Three Hundred Fifty Thousand ($350,000.00) Dollar remittitur." Appellants filed the remittitur and perfected this appeal.

Lew G. Larson (Larson), a plumber, began working at Gentry Company for Hoyte Gentry (Gentry), a plumber and plumbing contractor in 1963. In December, 1968, Gentry formed Cactus Utility Company, a corporation which did utility work in connection with plumbing contracts. From the time of incorporation until March 1, 1974, Gentry was the sole stockholder of Cactus Utility Company (Cactus). Larson became an employee of both Cactus and Gentry Company.

In 1968, Larson became a foreman and in 1972 Gentry elected Larson as President of Cactus. On March 1, 1974, Gentry gave 48 percent of Cactus capital stock to Larson and 4 percent to the corporation's attorney, Richard J. Hatch, retaining 48 percent for himself. The old stock certificate was cancelled and new certificates were issued.

In 1980, Larson decided to dispose of his interest in Cactus. Larson and Gentry offered to sell their shares to each other for $850,000.00 to no avail. The parties later worked out a plan whereby the assets of Cactus would be divided. The plan provided that a subsidiary corporation would be established by Cactus under the name of Larson Plumbing and Utility Company. Certain assets would then be transferred from the books of Cactus to Larson Plumbing and Utility Company, the subsidiary. Then, Lew G. Larson would transfer and assign all his shares of capital stock in Cactus (hereinafter "Old Cactus") to Cactus Utility Company (hereinafter "New Cactus") in exchange for all of the stock in the subsidiary corporation. After the exchange of assets and stock, Larson would own 100% of Larson Plumbing and Utility Company and Gentry would own 96% of New Cactus with four shares still held by Richard J. Hatch.

The implementation agreement provided that, after the exchange of stock and the division of assets, the "increase of net value of Cactus Utility Co. between March 1, 1974 and October 1, 1980 ... shall be divided equally between the two companies." The determination of net value was to be made as soon as possible by Cactus Utility Company's accountant, Wayne Rasmussen.

The exchange of stock and division of equipment was completed in 1980. The Separation Agreement was effective on October 1, 1980. On October 1, 1981, Larson met with the accountant and the attorney for Cactus and was advised that the final distribution to his interest was $26,408.36. Larson filed suit on September 24, 1982, to obtain an accounting and the remaining assets of "Old Cactus" to which he was entitled. On August 22, 1984, several days before trial, further calculations by Cactus' accountant showed Larson entitled to receive $267,439.29.

As previously noted, the jury found Larson Plumbing and Utility Company entitled to recover $787,053.00 and the trial court ordered a $350,000.00 remittitur. Gentry and Cactus Utility Company appealed, raising fourteen points of error. Larson and Larson Plumbing replied and raised two cross-points of error.

Appellants' first point of error alleges that the trial court erred in overruling his

special exception to any reference or pleading based on the Stock Purchase Agreement.

The trial court is clothed with broad discretion in ruling on special exceptions. Its ruling will not be disturbed on appeal in the absence of a showing of an abuse of that discretion. *Barnard v. Mecom*, 650 S.W.2d 123, 125 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Hubler v. City of Corpus Christi*, 564 S.W.2d 816, 820 (Tex.Civ.App. —Corpus Christi 1978, writ ref'd n.r.e.).

■ Appellants contend that the Stock Purchase Agreement was superseded by the subsequent agreement of the parties for the division of the increase in the assets of the corporation. At a pre-trial hearing, appellants argued that, because the Stock Purchase Agreement was of no force and effect, appellees could not be permitted to refer to it or base a claim on it. Appellants then conceded that the Stock Purchase Agreement would doubtless come into evidence during the trial. Appellants have failed to show any abuse of discretion by the trial court in overruling this special exception. Appellants' first point of error is overruled.

■ Appellants' second point of error complains that the trial court erred in admitting the Stock Purchase Agreement into evidence. "Predicates for complaints on appeal must be preserved at the trial court by motion, exception, objection, plea in abatement, or some other vehicle." *PGP Gas Products, Inc. v. Fariss*, 620 S.W.2d 559, 560 (Tex.1981); *O'Shea v. Coronado Transmission Co.*, 656 S.W.2d 557 (Tex. App.—Corpus Christi 1983, writ ref'd n.r. e.). Appellants made no objection to the admission of the Agreement into evidence at the time it was offered and admitted. Appellants did make an objection to its admission later in the trial but an objection must be made when the evidence is offered, not after it has been received, in order to be considered on appeal. *Montes v. Lazzara Shipyard*, 657 S.W.2d 886, 889 (Tex.App.—Corpus Christi 1983, no writ). Appellants' second point of error is overruled.

■ Appellants' third point of error contends that the trial court erred in allowing copies of the Stock Purchase Agreement to be distributed to the jury. The copies were distributed to the jury for the limited purpose of allowing the jury to follow Larson's testimony in reference to the specific exhibit. The copies were retrieved immediately after the jury finished reviewing the exhibit so that the jury had only one Plaintiff's Exhibit Number 4 that went into the jury room.

Texas Rule of Evidence 102, authorizes the trial court to construe the rules "to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and the proceedings justly determined." The trial court apparently agreed with appellees that the distribution of the copies would facilitate the trial by saving time and would promote clarity of understanding for the jurors. The trial court was certainly within its discretion in allowing the distribution of the copies of Plaintiff's Exhibit Number 4. Appellants' third point of error is overruled.

Appellants' fourth through seventh points of error allege that the trial court erred in allowing appellees to ask an expert witness a hypothetical question that assumed facts not supported by the evidence, in allowing the response to that question and in granting a judgment based on that response. Appellants contend that, because the question and answer were inadmissible, there is no evidence or insufficient evidence to support the finding upon which the judgment is based. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex. App.—Corpus Christi 1981, writ ref'd n.r. e.); CALVERT, *No Evidence and Insuffi-*

*cient Evidence Points of Error,* 38 Tex.L. Rev. 361 (1960).

Appellees hired Dorothy Fowler, a Certified Public Accountant, to review the corporate books and determine the net value of Cactus for the purpose of effecting a division of assets of the company. Ms. Fowler, testifying as an expert witness, was asked to make seven assumptions in order to determine Larson Plumbing's distributive share of Cactus.

■ Hypothetical questions should be restricted to the facts in evidence or to be put into evidence in order to prevent misleading or confusing the jury. However, "it is within the province of counsel to assume, within the limits of the evidence, a state of facts which he contends the evidence justifies and which enables the witness to form an intelligent answer from the facts assumed...." *Roth v. Law,* 579 S.W.2d 949, 954 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). "It is not necessary to the propriety of such a question that it include a reference to all of the relevant facts in evidence nor that it be confined to facts proven with mathematical certainty. It may include inferences reasonably drawn from other facts proved...." *Burns v. Bridge Engineering Corp.,* 465 S.W.2d 427, 432 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.). Therefore, we must look at the assumptions challenged to determine whether they had a basis in the evidence.

Assumption number one states that "market-value" as defined in paragraph six of the Stock Purchase Agreement should be used to calculate the division of corporate assets between the parties. The Stock Purchase Agreement, which was admitted into evidence, defines "market value" as "the purchase and sale price" of the assets.

Appellants argue that this measure of value is inapplicable because the Stock Purchase Agreement was superseded by the subsequent Plan and Agreement for Division and Separation and the Implementation of Corporate Plan of Division and Separation. Neither the Plan nor the Implementation expressly cancel or incorporate the Stock Purchase Agreement. These subsequent agreements simply state that, with certain exceptions, the parties shall divide the increase in "net value" of Cactus between March 1, 1974 and October 1, 1980. Appellant, Gentry, testified that he understood "net value" to be the difference between liabilities and assets, and "value" to be the sales price less expenses, or the profit.

■ Expert witness, accountant Dorothy Fowler, testified that when selling or distributing a company to various parties, "market value" is usually used to determine the value of the assets. Ms. Fowler defined market value as the value obtainable for an asset or the amount a willing buyer would pay and a willing seller would accept. We find that assumption number one had a basis in the evidence.

■ Assumption number two states that Plaintiff's Exhibit Seven, the inventory of stock and equipment, represents the fair market value of the items listed. Larson testified that he wrote the value of the items based on the amount they could be bought or sold for, and that the figures represented the fair market value of the items. This assumption has support in the evidence.

■ Assumption number three states that Cactus' value was $1,700,000.00. In 1979, Gentry and Larson agreed that the net worth of Cactus was $1,500,000.00. In 1980, Larson and Gentry each offered to sell their shares to the other for $850,-000.00. This assumption finds support in the evidence.

■ Assumption number four states that liability for taxes would be shared equally between Larson, Larson Plumbing and Utility Company, Gentry and Cactus. Plaintiff's Exhibit Eleven, the Implementation of Corporate Plan of Division and Separation of Cactus, Section 5(b), clearly states that the tax liability would be shared equally by the parties named. This assumption is supported by the evidence.

Assumptions five and six are not disputed.

■ Assumption number seven, on the other hand, is very hotly disputed by appellants. This assumption states that the net worth of Cactus in 1974 was zero. In 1974, Gentry gave 48 shares of Cactus stock to Larson. Accountant Dorothy Fowler stated that she assumed a zero value because the stock was a gift. In addition, Fowler noted that the book value of Cactus was $95,783.33 which included a Certificate of Deposit belonging to Gentry. After the $113,684.85 Certificate of Deposit was deducted from the books, the book value of the company was—$17,901.52. Fowler testified that she had no appraisal or agreement upon which to base a market value for 1974. These figures were prepared by Cactus' accountant, Mr. Wayne Rasmussen. Assumption number seven is based on facts in evidence.

Because the assumptions are supported by the evidence, the trial court did not err in allowing the hypothetical question or the calculations in Plaintiff's Exhibit 17 into evidence. Because the calculations of Dorothy Fowler were admissible, a verdict based on the calculations is supported by sufficient evidence. Appellants' fourth, fifth, sixth and seventh points of error are overruled.

Appellants' eighth, ninth and tenth points of error contend that there was no evidence to support the submission of Special Issues 1, 2 and 3 which inquired into the book value and market value of Cactus and the amount due to Larson Plumbing as a result of the division of Cactus.

■ In determining whether special issues should properly have been submitted to the jury, we must review the evidence and all reasonable inferences therefrom in the light most favorable to the submission of the issues and disregard any contrary evidence. *Bounds v. Caudle,* 560 S.W.2d 925, 930 (Tex.1977); *Gray v. Baker & Taylor Drilling Co.,* 602 S.W.2d 64, 65 (Tex.Civ. App.—Amarillo 1980, writ ref'd n.r.e.).

■ The trial court may refuse to submit an issue only if there is no evidence to warrant its submission. *Brown v. Goldstein,* 685 S.W.2d 640 (Tex.1985). If there is any evidence of probative force in support of the issue, the trial court is required to submit the issue. *Gomez v. Franco,* 677 S.W.2d 231, 234–35 (Tex.App.—Corpus Christi 1984, no writ). Evidence is probative when it is more than a surmise or suspicion and it tends to prove the proposition. *Gray,* 602 S.W.2d at 65.

■ Special Issue Number 1 inquires about book value. Plaintiff's Exhibit Number 14 contains the calculations prepared by appellants' accountant as to "Old" Cactus Utility's net worth, net increase, distributions and tax liability. Defendant's Exhibits 5 and 6 were enlargements of pages 1 and 2 of PX–14 and were offered without limitation as to their purpose. Because this evidence was offered by appellants without limiting its purpose, appellants are bound by the facts recited therein. *Western Construction Co. v. Valero Transmission Co.,* 655 S.W.2d 251, 253 (Tex.App.—Corpus Christi 1983, no writ). Plaintiff's Exhibit 14 and Defendant's Exhibits 5 and 6 support the submission of Special Issue Number 1. Appellants' eighth point of error is overruled.

■ Special Issue Number 2 inquires about the market value of Cactus as of August 31, 1984, and Special Issue Number 3 asks the jury to determine the amount due to Larson Plumbing under Plaintiff's Exhibit 11.[1] Plaintiff's Exhibit 17 contains figures on both market value and the amount due to Larson Plumbing, therefore, there is some probative evidence to support the submission of Special Issues 2 and 3. Appellants' ninth and tenth points of error are overruled.

Appellants' eleventh point of error alleges the trial court erred in failing and refusing to grant their motion for judgment non obstante veredicto.

1. Plaintiff's Exhibit 11 is the "Implementation of Corporate Plan of Division and Separation of Cactus Utility Company": entered into by the parties on November 1, 1980, to determine the method of dividing "Old Cactus."

In reviewing an order overruling a judgment non obstante veredicto, this Court must ascertain whether the material jury findings are without support in the evidence or are contrary to the evidence. All the evidence will be viewed in the light most favorable to the jury's findings. *Missouri Pacific Railroad Co. v. Shaw*, 620 S.W.2d 161, 163 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). After reviewing the evidence according to this standard, we hold that the findings of the jury are adequately supported by the evidence. The trial court did not err in refusing to grant appellants' motion for judgment non obstante veredicto. Appellants' eleventh point of error is overruled.

Appellants' twelfth and thirteenth points of error complain of the award of $30,000 accounting fees because there was no evidence to support the submission of this issue and the award of accounting fees is not permissible by law.

The parties entered into several agreements in attempting to divide the assets of Cactus. One such agreement, entitled Implementation of Corporate Plan of Division and Separation of Cactus Utility Co., provided that the accountant regularly employed by Cactus, Wayne Rasmussen, should determine the net value of Cactus as soon as possible in order to effect a division of the assets of the company.

The jury found, in response to Special Issue Number 16, that Mr. Rasmussen failed to determine the net value of Cactus for the purpose of dividing the assets of the company as soon as possible, and that the reasonable fees for the accountant of appellee in the division of Cactus was $30,000.00.

By the jury's finding that that portion of the contract was breached, a legal basis was provided for damages that naturally flowed from the breach, i.e., $30,000 in accountant's fees. *Ybarra v. Saldana*, 624 S.W.2d 948 (Tex.App.—San Antonio, 1981, no writ). The damages to be awarded for breach of contract are measured by the amount necessary to place the innocent party in the financial position it would have been in had the contract been fully performed. *Little Darling Corp. v. Ald, Inc.*, 566 S.W.2d 347, 349 (Tex.Civ. App.—Dallas 1978, no writ).

We recognize that courts have consistently held that expert witness fees and expenses are merely expenses incidental to preparation for trial and are not recoverable as an element of damages or costs of court. *Whitley v. King*, 581 S.W.2d 541, 544 (Tex.Civ.App.—Fort Worth 1979, no writ). However, accountant's fees in the present case are not expenses incidental to litigation, but were incurred by the appellees as a result of the appellant's breach of contract.

Appellants' twelfth and thirteenth points of error are overruled.

Appellants' fourteenth point of error complains that the trial court erred in granting the judgment against him personally. Appellants maintain that the judgment should only have been granted against Cactus in favor of Larson Plumbing and should not have included individuals since the duties and obligations were only between the companies.

The "Plan and Agreement For Corporate Division and Separation of Cactus Utility Co." (Plan) stated that it would "be binding upon and enure to the benefit of the parties, their personal representatives, successors, heirs or assigns." The Plan was signed by Lew G. Larson as President of Cactus and by Hoyte Gentry, Lew G. Larson and Richard J. Hatch, *"Individually."*

The "Implementation of Corporate Plan of Division and Separation of Cactus Utility Co." (Implementation) designated the parties as Cactus Utility Co., Larson Plumbing & Utility Co., Hoyte Gentry and Lew G. Larson, and made both companies and both parties equally liable for all work remaining to be performed by Cactus and equally responsible for all tax liabilities. Lew G. Larson signed the Implementation as President of Larson Plumbing and then Hoyte Gentry and Lew G. Larson each signed on lines under which only their names were typed.

Appellees sued and pled appellant Gentry's liability in an individual capacity. If appellant Gentry wished to argue that he was not liable in the capacity in which he was sued, he was charged with the duty of raising that defense in a verified pleading in accordance with TEX.R.CIV.P. 93. *Butler v. Joseph's Wine Shop, Inc.*, 633 S.W.2d 926 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Appellant Gentry did not so plead, nor is the truth of the matter apparent in the record so as to excuse such non-compliance. The Plan and Implementation bind the parties as well as the corporations and contain the signatures of Larson and Gentry as individuals.

The First Court of Appeals, in *Tashnek v. Tashnek*, 630 S.W.2d 653 (Tex.App.—Houston [1st Dist.] 1981, no writ) addressed a similar set of circumstances. In *Tashnek*, the parties owned three corporations which they decided to dissolve because of ongoing disputes. The parties agreed to consolidate the assets in one corporation, liquidate or distribute these assets and then dissolve the remaining corporation. A dissolution agreement was signed and after most of the dissolution was effected, appellants filed suit claiming breach of the agreement. The jury found that appellees had delayed distribution, had made unauthorized payments and had permitted expenditures which were prohibited by the contract.

The Court held, in affirming the award of damages against the individuals, that:

One who was a party to the dissolution agreement, and who was also a director or officer of the corporation charged with the responsibility of distribution on behalf of the corporation, would not be relieved of his obligation as an individual party to the dissolution agreement in absence of special circumstances not present here. In other words, appellees individually agreed to distribute or authorize the Board of Directors to distribute the assets of R.L.D. Corporation after the close of business on February 2, 1976. Although this agreement may not be binding on a director of a corporation in his capacity as a director, it would not affect his or her liability for a breach of individual obligation.

*Tashnek*, 630 S.W.2d at 655–56.

There is evidence in the record of appellant Gentry's individual liability. The trial court did not err in granting judgment against appellant, individually. Appellant's fourteenth and final point of error is overruled.

Appellees' first cross-point of error complains of the trial court's order of remittitur of $350,000.00 because it was not based on a showing of prejudice and/or a severable element of damage. The trial court conditioned its overruling of appellants' motion for new trial on the $350,000.00 remittitur by appellees. "Since 1846, it has been within the power of the trial court to order a party to remit a portion of the damages awarded as a condition to the overruling of the other party's motion for new trial." *Flanigan v. Carswell*, 159 Tex. 598, 324 S.W.2d 835, 839 (1959).

In determining whether a verdict is excessive and a remittitur is required, the trial court is governed by the same standard as the courts of appeals. The court is to exercise its sound judicial discretion in ascertaining what is reasonable compensation and treat the balance as excess and order a remittitur of the excess. *Flanigan*, 324 S.W.2d at 840; *Wharf Cat, Inc. v. Cole*, 567 S.W.2d 228 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

The question to be addressed by the court of appeals is whether the trial court abused its discretion in ordering remittitur. *Flanigan*, 324 S.W.2d at 840; *Canon, U.S.A. v. Carson Map Co.*, 647 S.W.2d 321 (Tex.App.—Corpus Christi 1982, no writ). When reviewing the action of a trial court in ordering a remittitur, the court of appeals should allow the trial court's action to stand unless, when considered in light of the entire record, the remittitur would be manifestly unjust. *Flanigan*, 324 S.W.2d at 840–41; *Reviel v. A.L. Leal, Inc.*, 687 S.W.2d 467, 468 (Tex.App.—Dallas 1985, no writ); *Accent Builders Co. v. Southwest*

*Concrete Systems, Inc.,* 679 S.W.2d 106, 112 (Tex.App.—Dallas 1984, writ ref'd n.r. e.); *Canon,* 647 S.W.2d at 324–25.

 In weighing the propriety of the order of remittitur, the fact that the trial court assigned no reason for its action in requiring a remittitur has no relevancy. Additionally, there need be no proof of passion or prejudice or any other showing that the jury was improperly motivated before the court of appeals can sustain the trial court's order granting the remittitur. *Flanigan,* 324 S.W.2d at 841; *McMillin v. L.D.L.R.,* 645 S.W.2d 836, 842 (Tex.App.— Corpus Christi 1982, writ ref'd n.r.e.).

 As stated earlier in this opinion, calculations by Cactus' accountant on August 22, 1984, showed Larson entitled to receive $267,439.29. Larson's accountant, on the other hand, calculated Larson's entitlement to be $787,053.00. Although the calculations were made during the same period of time, the figures varied considerably, in part, due to the different methods of valuation used by the parties. Larson's accountant used market value for some items and book value for others. When the figures are compared, vast discrepancies will be noted between the two sets of calculations. The jury award of $787,053.00 less the remittitur of $350,000.00 allows a recovery by Larson Plumbing of $437,053.00; a figure that falls approximately midway between the figures arrived at by each of the parties.

We cannot say, in light of the evidence before us, that the trial court's order of remittitur was manifestly unjust and was an abuse of discretion. Appellee's cross-point number one is overruled.

In light of our decision affirming the judgment in appellees' favor, we find it unnecessary to address appellees' second cross-point that the court erred in refusing appellees' Special Issues on confidential relationship and bad faith dealing. TEX.R. CIV.P. 451.

The judgment of the trial court is AFFIRMED.

NYE, Chief Justice, concurring.

I concur in the result.

The majority summarily disposes of appellant's twelfth and thirteenth points of error and injects "trial expenses" as not being recoverable as an element of damages. "Trial expense" is not in the trial court's judgment. This latter rule set out in the majority's opinion has no place therein. The plaintiffs, appellees, have expertly handled their damage phase of this lawsuit and it should be set forth in some detail to explain the affirmance of the trial court's judgment.

The plaintiffs, appellees here, pled for and won special issue submission on accountant's fees as an element of damages for the appellants' breach of contract. Since the time of *Hadley v. Baxendale,* 9 Exch. 341 (1854), and even before, a plaintiff has been able to recover all of the damages that can reasonably be considered a consequence of the defendant's breach of contract. In Texas, the general rule has been stated various ways. This Court said for instance: "An injured party should be given just compensation for damages or loss actually sustained." *North American Corp. v. Allen,* 636 S.W.2d 797, 799 (Tex. App.—Corpus Christi 1982, no writ); *Copenhaver v. Berryman,* 602 S.W.2d 540, 543 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). The damages to be awarded for breach of contract are measured by the amount necessary to place plaintiffs in the financial position they would have been had the contract been fully performed. *Little Darling Corp. v. Ald, Inc.,* 566 S.W.2d 347, 349 (Tex.Civ. App.—Dallas 1978, no writ).

It is elementary law and the Supreme Court and other appellate courts have said many times that the measure of damages for a breach of contract is just compensation for the loss or damage actually sustained. *See Stewart v. Basey,* 245 S.W.2d 484, 486 (Tex.1952); *Board of Regents v. S & G Construction Co.,* 529 S.W.2d 90, 98 (Tex.Civ.App.—Austin 1975, writ ref'd n.r. e.).

In the instant case, appellees alleged in their First Amended Original Petition that they incurred accountant's fees as a result of the failure of Cactus Utility Company's accountant to determine the net value "as soon as possible," as was provided and required in the contract between them. Appellees sought and secured special issues on this point. The jury, based on competent evidence, found in their favor. Appellees have urged in this appeal that the award of accountant's fees were a proper award of damages, not a tax of costs, citing *Ybarra v. Saldana*, 624 S.W.2d 948 (Tex.App.—San Antonio 1981, no writ).

The Appellees proved that they were damaged by the failure of appellants to perform the accounting which appellants were required to do by their contract. Because of appellants' failure to perform, appellees had to go to the expense of hiring an accountant to determine Cactus Utility's net value. That expense was part of the damages appellees sustained for appellants' breach. The award of that amount is "just compensation," and is necessary to place appellees in the financial position they would have been in had the contract been fully performed and not breached.

I agree, appellants' points of error twelve and thirteen should be overruled. The judgment of the trial court should be affirmed.

### OPINION ON MOTION FOR REHEARING

DORSEY, Justice.

Only two of appellants' points of error on motion for rehearing dealing with the admissibility of a Stock Purchase Agreement merit further discussion. Appellants complain of our ruling that they failed to preserve error regarding the admission of the Stock Purchase Agreement because they failed to object when it was tendered and admitted.

A review of the proceedings reveals that the following transpired on August 27, 1984:

MR. HARRIS: At this time I'd like to offer this Stock Purchase Agreement.

MR. HATCH: We have no objection to it, Your Honor.

THE COURT: Plaintiff's Exhibit Number 4 is admitted.

Appellant argues that this Court is being "highly technical about a rule of evidence and procedure in a time when our courts have looked to the reasonableness of a matter rather than form." Appellant contends that his objection to the admissibility of the evidence on the following day was sufficient to preserve error for appeal. A review of the proceedings on August 28, 1984, reveals the following colloquy:

MR. HATCH: No, Judge, and let me— before we proceed any further, can we backtrack, and I want to get an objection into the record.

THE COURT: Yes.

MR. HATCH: As the Court will recall, my Special Exception Number one went to the Exhibit Number 1 to their Plaintiff's Original Petition—

THE COURT: Yes.

MR. HATCH: —which is now Plaintiff's Exhibit 4, which has been offered in evidence, which is that Stock Purchase Agreement signed between the parties and dated January 12, 1978.

My special exception at that time excepted to them using it for the reason that it was of no further force and effect, and that no cause of action could be based thereon.

I think the Court's comment—and the Court will correct me if I'm wrong, or the record will correctly reflect what the Court's feelings were—the Court had to carry this along because there is no way to tell whether or not that allegation— that allegation by me is correct until all the evidence is in.

I overlooked that fact and erroneously stated in the record that I had no objection to that exhibit. That exhibit has not been offered to the jury yet—presented to the jury, nor has it been read to the

jury. I think that's where we stopped yesterday.

So for the record, before we go any further, I want to state that I do have an objection to the introduction of Plaintiff's Exhibit Number 4, which was the subject matter of my Special Exception Number One.

\*　\*　\*　\*　\*　\*

So again for the record, I do object to the introduction of Plaintiff's Exhibit Number 4 for the reason that, as stated in my Special Exception, it is of no further force and effect and no cause of action can be based thereon, and that any allegations and references to the Stock Purchase Agreement as a basis of claim should not be permitted by the Court.

\*　\*　\*　\*　\*　\*

All I want to do is protect the record, that we don't later on have the claim that I waived my objection to claiming that this document has been superseded by not objecting to it.

So again, *I respect the Court's ruling that it previously made that the document will come in,* and reserve the ruling on whether it has been superseded to a later time, and I want the record to reflect clearly that I am not waiving my objections that it is a superseded contract and cannot be made the basis of a recovery.

\*　\*　\*　\*　\*　\*

THE COURT: For the record, I'll give you a running objection from this moment forward as to Plaintiff's Exhibit Number 4. [Emphasis added]

Generally, in order to be considered on appeal, an objection to the admission of evidence must be made when the evidence is offered, not after it has been received. *Montes v. Lazzara Shipyard,* 657 S.W.2d 886, 889 (Tex.App.—Corpus Christi 1983, no writ). But, assuming that this late objection was good, we find no explicit ruling by the court on this objection. "An objection must actually be overruled before it preserves error for our review." *Perez v. Baker Packers, A Division of Baker Inter-*

*national Corp.,* 694 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

Viewing the matter in the light most favorable to appellant, that the objection that the Agreement was "superseded" was really an objection to its relevance and assuming that the trial court implicitly overruled this objection, the trial court is granted broad discretion in determining the admissibility of evidence. The trial court's decision will not be disturbed absent an abuse of that discretion. *Hughett v. Dwyre,* 624 S.W.2d 401, 408 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.); *Luvual v. Henke & Pillot, Division of Kroger Co.,* 366 S.W.2d 831, 838 (Tex.Civ.App.—Houston 1963, writ ref'd n.r.e.).

After carefully reviewing the record, we conclude that the trial court did not abuse its discretion.

All of appellants' points on motion for rehearing are overruled.