**INTERCERAMIC, INC. d/b/a
Interceramic, USA,
Appellant,**

v.

**SOUTH ORIENT RAILROAD
COMPANY, LTD.,
Appellee.**

No. 06–98–00158–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Sept. 16, 1999.

Decided Sept. 17, 1999.

Rehearing Overruled Oct. 13, 1999.

John P. Mobbs, Beck & Given, Donald Dean Bush, Bush, Craddock & Reneker, El Paso, for Appellant.

E. Link Beck, Beck & Given, Dallas, John R. Mercy, Atchley, Russell, Waldrop, Texarkana, for Appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

WILLIAM J. CORNELIUS, Chief Justice.

Interceramic, Inc. appeals from an adverse judgment in a breach of contract suit tried to the court. South Orient Railroad Company sued Interceramic for breach of contract because Interceramic failed to ship an agreed volume of ceramic tile from Chihuahua, Mexico to Garland, Texas, via the railroad. Interceramic filed a counterclaim alleging that the Railroad failed to timely deliver the tiles that had been shipped according to the contract. The trial court found in favor of the Railroad on all issues and rendered judgment for the Railroad for $564,052.32 in damages, plus interest and attorney's fees. The court made extensive findings of fact and conclusions of law in support of its judgment.

The Railroad and Interceramic entered into a one-year contract on August 18, 1995, in which the Railroad agreed to transport tiles to and from Interceramic's Chihuahua plants to warehouses in Garland. The Railroad also agreed to move the tiles by truck, called drayage, from the train station to Interceramic's warehouses. The Railroad agreed to provide service at least three times per week. Interceramic guaranteed that it would ship a minimum of ten loads per train from Chihuahua to Garland, or thirty loads or loaded vans per week. Invoicing and payment was to be made twice a month.

It is undisputed that Interceramic never met the volume requirements of the con-

tract. During the entire contract term, it shipped only 234 vans by rail. Before the end of the one-year term of the contract, at the end of June 1996, the Railroad stopped service. The trial court found that the Railroad stopped service in order to mitigate its losses after Interceramic failed to ship the required number of loads, and the court reduced damages accordingly.

On appeal, Interceramic contends that the judgment is erroneous because its failure to ship the required quantities was excused by a prior breach by the Railroad; the Railroad waived its right to enforce the volume provision of the contract by waiting until the expiration of the contract to seek enforcement; the calculation of damages is defective; and the trial court abused its discretion by admitting expert witness testimony that was provided by supplementation only eight days before trial.

■ Interceramic contends that the Railroad breached the contract because the contract required the Railroad to provide timely drayage for the tiles from the railroad station to the Interceramic warehouses. Interceramic contends that this failure to provide timely drayage was the first breach of the contract, and that it excused its own failure to ship the agreed loads of tiles.

■ Whether a party has breached a contract is a question of law, not a question of fact. *Lafarge Corp. v. Wolff, Inc.,* 977 S.W.2d 181, 186 (Tex.App.—Austin 1998, pet. denied); *Garza v. Southland Corp.,* 836 S.W.2d 214, 219 (Tex.App.—Houston [14th Dist.] 1992, no writ). In this case, the court also acted as the fact finder, so it was responsible for determining the disputed facts as well as applying the law to those facts.

■ When a party materially breaches a contract, the other party may treat the contract as ended and cease performance. Thus, a party who fails to perform his obligation may not thereafter enforce the remaining terms of the contract against the other party. *Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 692 (Tex. 1994); *Graco Robotics, Inc. v. Oaklawn Bank,* 914 S.W.2d 633, 641 (Tex.App.—Texarkana 1995, writ dism'd); *Morgan v. Singley,* 560 S.W.2d 746, 748 (Tex.Civ. App.—Texarkana 1977, no writ).

The first issue is whether the trial court erred by finding and concluding that the Railroad did not breach the contract.

Interceramic argues that the contract requires the Railroad to provide timely drayage of the loads between the railroad station and its warehouses, and that the Railroad did not meet that requirement. Thus, it argues that the trial court erred by concluding that the Railroad did not breach the contract. The initial question is whether the contract requires such performance. It does not. The contract states only that the service will include "all drayage, ramping and de-ramping, etc." It does not give any specifications whatsoever for the drayage. There is no requirement that transport be completed within any particular length of time.

Where a contract calls for certain performance, but expresses no time for that performance, the law implies that a reasonable time was contemplated. Interceramic, however, never raised the issue of reasonable time with the trial court, and it does not contend on appeal that the rule of reasonableness should be applied.

The trial court found that the contract does not specify a delivery schedule, that Interceramic unilaterally implemented specific appointment times for the drayage after the contract was signed, and that Interceramic's signatory to the contract, Dave Corey, misled the Railroad regarding those appointments. These findings, which are supported by evidence, are sufficient to support the trial court's conclusion

that the Railroad did not breach the contract in its performance of the drayage.

Interceramic apparently contends that the signed contract is not the sole document comprising the contract, and that a letter it wrote to the Railroad a week after the contract was signed should be considered as a component of the contract, or at least should have been considered by the trial court in construing the contract. The trial court clearly considered only the signed contract, as is reflected by the language used in its findings of fact. There is no finding of fact addressing the letter, and there is no complaint on appeal that the trial court erred by failing to consider the two documents as a single contractual entity. Accordingly, we will restrict our review to Interceramic's contention on appeal, i.e., that the letter provides evidence from which we should conclude that the court erroneously interpreted the terms of the contract.

■ Interceramic bears a difficult burden. In a bench trial in which the sufficiency of the evidence is challenged, the trial court's findings are reviewed for legal and factual sufficiency using the same standards as used in reviewing jury findings. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). The trial court has the right to believe or disbelieve evidence as it sees fit and to resolve conflicts in the evidence.

The only portion of the contract itself that is relevant to this issue is quoted above, and it contains no specifics about the time or manner of the drayage. The letter on which Interceramic relies contains language first confirming the volume of freight and then stating:

> However, if your drayage company is not able to pickup [sic] these orders,

then we will have to move these orders by normal truck service so we can meet our delivery dates. In addition, it is very important that the Dallas/Ft. Worth drayage company call our Warehouse to arrange for delivery appointments. Otherwise, the loads delivered without appointments will tie up our docks and create a good deal of congestion.

The contract contains no provision specifying delivery times. Nor does the letter. Further, the trial court found that Interceramic never complained about the drayage, but simply placed other carriers ahead of the Railroad for transporting the tiles, and specified the use of alternative carriers rather than the Railroad. The court further found that the schedules for delivery that were eventually communicated to the Railroad were not the same schedules that had originally been discussed.[1]

The contract is not ambiguous as to the specifics of the drayage. It is simply silent. Although the letter could be construed to indicate that the parties contemplated that timely drayage would be required, it is by no means conclusive on that point. Indeed, the letter contains absolutely no specific information about the timing of drayage. Thus, even if we agreed that the letter was a part of the contract or demonstrated the parties' own construction of the contract, it does not constitute conclusive evidence so as to make the trial court's finding erroneous.

■ Interceramic next contends that the Railroad waived any right to enforce the contract because it did not seek to enforce the volume provisions until after the contract had expired. As the trier of facts on the issue of waiver, the trial court

---

1. There is evidence that Interceramic informed the Railroad that it could only deliver to Interceramic's location between 7:00 a.m. and 12:00 noon-by placing that restriction on its purchase orders (which the Railroad did not receive). The Railroad had understood that deliveries could occur at any time.

assessed the credibility of the witnesses and the weight to be given their testimony. In so doing, the court could believe any witness and disbelieve other witnesses, resolve inconsistencies in the testimony of any witness as well as in the testimony of different witnesses, and arrive at the facts deemed most reliable under the evidence. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986); *Shaver v. Schuster*, 815 S.W.2d 818, 825 (Tex.App.—Amarillo 1991, no writ).

■■■ The affirmative defense of waiver may be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex.1996). A waivable right may spring from law or, as in this case, from a contract. *Id.*; *Ford v. Culbertson*, 158 Tex. 124, 308 S.W.2d 855, 865 (1958); *see Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.). A party's express renunciation of a known right may establish waiver. *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d at 643 (citing *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d at 213). A party's silence or inaction over a period of time long enough to show an intention to yield the known right is enough to show waiver.

■■■ Waiver is largely a question of intent. *Kennedy v. Bender*, 104 Tex. 149, 135 S.W. 524, 525 (1911); *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex. App.—Texarkana 1992, writ denied). There can be no waiver unless it is intended by one party and so understood by the other. *Vessels v. Anschutz Corp.*, 823 S.W.2d at 765; *Loggins v. Gates*, 301 S.W.2d 525, 527 (Tex.Civ.App.—Waco 1957, writ ref'd n.r.e.). Waiver should not be inferred contrary to the intention of a party whose rights would be injuriously affected, unless the opposite party has been misled to its prejudice. *Vessels v. Anschutz Corp.*, 823 S.W.2d at 765; *Cox v. Bancoklahoma Agri–Service Corp.*, 641 S.W.2d 400, 404 (Tex.App.—Amarillo 1982, no writ).

Interceramic contends that the Railroad waived its right to demand payment for the full volume of shipments because it did not do so until the term of the contract expired, rather than doing so on a monthly basis. Interceramic contends that the Railroad was silent or took no action over a period of time long enough to show an intention to waive the right to demand the agreed number of loads each month. The trial court found that the Railroad was not required to invoice for shipments not sent, and that even if it had been required to do so, the failure would not have constituted a material breach of the contract.

Roy Williams, the chief operating officer for the Railroad, testified that the Railroad refrained from billing Interceramic monthly for loads not shipped because the Railroad wanted to give Interceramic an opportunity to make up the shortfall during the remaining term of the contract.

In support of its position, Interceramic states that the evidence shows only that the Railroad first took the position that Interceramic would be required to pay for the unmet volume of shipping when it billed Interceramic one month after the end of the one-year term of the contract and three months after the Railroad abandoned the service line. As noted above, however, Williams also testified that the Railroad refrained from billing Interceramic for the deficient loads in order to give Interceramic the chance to make up the shortfall. Further, there is evidence that the Railroad did notify Interceramic that its shipping volume was not as set out by the contract.

The contract itself provides only that the Railroad would bill Interceramic twice a month. The only evidence Interceramic

points to as showing that the Railroad had any intention to waive its rights is its failure to bill each month for the unshipped quantities and evidence that the Railroad did not inform Interceramic that it believed it was entitled to immediate payment for the unshipped loads. Thus, Interceramic's contention rests solely on its position that the Railroad's failure to invoice monthly for the unshipped loads-or to otherwise inform Interceramic of its intentions-constitutes waiver. The court made a conclusion of law stating that the Railroad's claims were not barred by the doctrine of waiver. In findings of fact underlying the court's ruling, the court found that the Railroad was not required to invoice for vans not shipped; that the Railroad did not mislead Interceramic by failing to invoice for loads or vans not shipped; that on October 15, 1996, and on two subsequent occasions, the Railroad made a demand for payment for loads as guaranteed by the contract; and that the Railroad had complained to Interceramic's signatory to the contract in November of 1995 about the lack of shipments under the contract.

■■■■ Interceramic had the burden of proof on this issue. *Argee Corp. v. Solis,* 932 S.W.2d 39, 48 (Tex.App.—Beaumont 1995), *rev'd on other grounds,* 951 S.W.2d 384 (Tex.1997). When the party having the burden of proof appeals from an adverse fact finding in the trial court, the point of error should be that the matter was established as a matter of law, or that the finding was against the great weight and preponderance of the evidence. *O'Neil v. Mack Trucks, Inc.,* 542 S.W.2d 112 (Tex.1976). A complaint by the party with the burden of proof that there was no evidence to support the finding invokes appellate jurisdiction to consider the contention that the opposite of the finding was established as a matter of law. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *O'Neil v. Mack Trucks, Inc.,* 542 S.W.2d at

114; *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). The appellate court considers all the evidence in a case to determine if it is insufficient to support the finding or if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex. 1986); *Hurlbut v. Gulf Atl. Life Ins. Co.,* 749 S.W.2d 762, 769 (Tex.1987) (citing *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660).

Interceramic is, in effect, arguing that the evidence conclusively shows that the one month delay in billing, combined with a failure to bill for unshipped items during the term of the contract, constituted waiver. The Supreme Court held in *Tenneco Inc. v. Enterprise Prods. Co.,* 925 S.W.2d at 643, that a delay of three years in attempting to enforce performance of a contractual obligation constituted waiver. In the case of *CDB Software Co. v. Kroll,* 992 S.W.2d 31 (Tex.App.—Houston [1st Dist.] 1998, no pet. h.), the court found that a four year delay did not show waiver. Both decisions are based on the facts of the particular case. In this case, the trial court had evidence to support its findings of fact on which the conclusion of law rested, and Interceramic has not directed us to conclusive evidence to the contrary, or to sufficient evidence that would permit us to find that the trial court's findings are so against the great weight and preponderance of the evidence as to be manifestly unjust.

■■■■ Interceramic next contends that the court's award of damages is not supported by legally and factually sufficient evidence. The general rule is that the victim of a breach of contract should be restored to the position it would have been in had the contract been performed. Determining that position involves finding what additions to the injured party's wealth have been prevented by the breach

and what subtractions from its wealth have been caused by it. *Mistletoe Express Serv. v. Locke*, 762 S.W.2d 637, 638 (Tex. App.—Texarkana 1988, no writ). A proper measure of damages in a breach of contract case is the loss of contractual profit. *Municipal Admin. Servs., Inc. v. City of Beaumont*, 969 S.W.2d 31, 37 (Tex. App.—Texarkana 1998, no pet.).

We sustain a legal insufficiency point only when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the rules of law or evidence bar consideration of the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Uniroyal v. Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998); *Minnesota Mining and Mfg. Co. v. Atterbury*, 978 S.W.2d 183, 197–98 (Tex. App.—Texarkana 1998, pet. denied).

When considering a factual sufficiency point, we consider all of the evidence, not just the evidence that supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998). We set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.; Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

The court awarded judgment in the amount of $564,052.32 in damages, $99,208.26 in prejudgment interest, and $27,500.00 in attorney's fees. Interceramic argues that the damage award is improper because the evidence did not provide the necessary information for the trial court to award net profits rather than gross profits.

There was evidence of the expected number of shipments per week and the cost of each shipment. The contract provided for thirty loads per week at a cost of $940.00 per load. Roy Williams testified that after totaling the number of trailers that should have been shipped between the beginning date of the contract and the date on which the Railroad discontinued the operation, the total revenue from the expected shipments would have been $990,760.00. Williams testified that the Railroad witnesses had calculated the net profits, and that they totaled $580,000.00.

Douglas Phillips testified that, in making the calculations, he first determined the total income to be expected from the contract. From that amount, he then identified and deducted variable costs that were caused by the failure to ship, including drayage costs, lift costs, and fuel costs. He testified that the expenses amounted to $405.00 per load in drayage saved, lift costs of $3.07 per load, and fuel expense savings of $700.00 per week. He also deducted amounts saved (the total cost of operations for those months) after the Railroad ceased the operation on June 30, 1996, and the amount saved on the eight occasions when the Railroad operated fewer than three trains per week. After totaling those amounts, he calculated the lost profits under the contract as $576,800.00. Based on evidence that there were eight occasions when the Railroad operated fewer than three trains per week, the court deducted an additional $12,747.68 from that amount, to award $564,052.32.

Interceramic argues that this evidence is insufficient because it is not based on objective business data, but instead was based on information provided through memoranda instead of the underlying business documents. Interceramic also argues that the evidence is insufficient because Phillips did not deduct all expenses necessary to carry on the business. Interceramic specifically complains that the entire cost of the Mexican facility should have been deducted from the charges against it after that facility was closed on June 30, 1996. The expert evidently deducted that portion of the facility charge which the

Railroad attributed to Interceramic rather than the entire monthly cost of the facility. We do not find that attribution to be conclusively erroneous. It is clear from the evidence that Interceramic was a primary reason for the instigation of the intermodal service, and thus for the need to obtain the facility in question. It is also apparent, however, that Interceramic was not the only company using the service. Thus, it was appropriate to allocate the cost of the facility rather than charge its entire cost against a single shipper.

■ The remaining issue complains that there was evidence of additional expenses that were saved by the Railroad as a result of the failure to ship which prevented the court from reaching a correct assessment of damages. Although the testimony reveals disagreements about the type of expenses that should be allocated and the amounts of each type attributable to Interceramic, that is not the question here. We must determine if the evidence tendered is sufficient to support the court's conclusion. The court had evidence before it that provided gross expected income under the contract, and which then deducted a number of expenses that did not occur (in whole or in part) because of Interceramic's failure to ship and because of the Railroad's termination of service. The evidence provides a sufficient basis for the trial court to reasonably calculate the net profits lost by the Railroad due to Interceramic's breach.

■ Interceramic seems to argue that the damages evidence is insufficient because the Railroad did not show specific, individual amounts that should be charged to intangible items, such as overhead and general maintenance. We disagree. There is sufficient evidence of expected gross income, less expected expenses, to authorize the trial court to conclude that these figures included general intangible expenses such as overhead and general maintenance. Furthermore, Roy Williams testified that Douglas Phillips' calculations gave a figure of the Railroad's "net lost profits" due to Interceramic's breach. This testimony was given without objection. Testimony that an amount represents "net profits on jobs handled" means gross income earned, less direct costs and allowable overhead. *See Martin v. Davis Constructors, Inc.,* 552 S.W.2d 873, 879 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.). The lost profits need not be susceptible to exact calculation, but must only be shown with reasonable certainty. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994). An award of damages for lost profits may be based on estimates. *Little Darling Corp. v. Ald, Inc.,* 566 S.W.2d 347, 349 (Tex.Civ.App.—Dallas 1978, no writ). The estimates, however, must be based on objective facts, figures, or data. *Id.* The lost profits here were based on objective facts and data, and were calculated with reasonable certainty. There was no controverting objective data. There is legally and factually sufficient evidence to support the damage award.

■ Interceramic next contends that the trial court erred by admitting the testimony of Douglas Phillips because the Railroad did not timely supplement the bases for his opinions.

The Railroad identified Phillips as an expert witness in its first supplemental answers to Interceramic's interrogatories. Its answers also stated that he would be testifying about the economic damages incurred by the Railroad and that he had not yet formulated the mental impressions and opinions to which he might testify, but that his opinions would relate to the economic damages incurred by the Railroad as a result of Interceramic's breach of the contract. Phillips thereafter prepared a report, dated May 15, 1998, detailing his mental impressions and opinions, which

was mailed as a part of Interceramic's supplement to interrogatory answers on May 19, 1998. The trial began on May 27, 1998. Interceramic objected to Phillips' testifying, alleging that the supplementation of the Railroad's answers to interrogatories was untimely.

Interceramic did not complain about the answers to its interrogatories before trial, but when Phillips was brought to the stand it objected to the admission of his testimony because of the Railroad's failure to timely supplement its answers with Phillips' report. The trial court initially sustained the objection, but then changed her ruling to permit Phillips to testify about his opinions.[2]

In situations where supplemental responses are for some reason inadequate, and the complaining party is aware of the inadequacy before trial but waits until trial to object, the objection is too late and the complaint is waived. *State Farm Fire & Cas. Co. v. Morua,* 979 S.W.2d 616, 619–20 (Tex.1998).[3] In the *Morua* case, the Supreme Court adopted the reasoning of the 14th Court of Appeals,[4] agreeing that the proper procedure in such a case is either a pretrial objection or a pretrial motion to compel or for sanctions. The court distinguished *Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669 (Tex.1990) (per curiam), in which a party wholly failed to identify its expert although the expert was deposed before trial.

As in *Morua,* the defect here is not a complete failure to respond to interrogatories. It is not a failure to disclose a witness or provide details about his address or his expertise in a particular area, or a failure to identify the expected scope of his testimony, or a failure to specify the facts upon which his testimony would be based. All of these matters were known to Interceramic, including the fact that the Railroad had not yet provided the details of Phillips' opinions and mental impressions. Rather, the inadequacy here was the failure to give the details of a report previously and timely referenced and described. Interceramic did not object or attempt to obtain relief before trial, either before or after the report was provided for its review, so it waived any complaint.

Interceramic contends that it did not object to an inadequate supplementary response but to a complete failure, and because of that, its objection should come within the holding in *Sharp v. Broadway Nat'l Bank.* Its stated objection at trial, however, belies that contention. Interceramic objected, "[W]e are moving to strike the testimony of Douglas Phillips for improper—not failure to identify, but fatally improper identification within the time period. . . ." Under the authority of *State Farm Fire & Cas. Co. v. Morua,* 979 S.W.2d at 620, Interceramic's complaint was waived by failure to object before trial.

For the reasons stated, we affirm the judgment.

---

2. The Railroad stated at the time that it had no intention of attempting to introduce the report, but that it had merely used the report as a means of supplementing its answers to Interceramic's interrogatories.

3. *See Remington Arms Co. v. Caldwell,* 850 S.W.2d 167, 170–71 (Tex.1993).

4. *$23,900 v. State,* 899 S.W.2d 314, 317 (Tex. App.—Houston [14th Dist.] 1995, no writ).