MISTLETOE EXPRESS SERVICE OF OKLAHOMA CITY, OKLAHOMA, Appellant,

v.

Phyllis LOCKE, d/b/a Paris Freight Company, Appellee.

No. 9641.

Court of Appeals of Texas, Texarkana.

Nov. 1, 1988.

Rehearing Denied Nov. 29, 1988.

H.C. McCracken, McCracken, Taylor & Nelson, P.C., Carrollton, for appellant.

Bill Flanary, Paris, for appellee.

CORNELIUS, Chief Justice.

Mistletoe Express Service appeals from an adverse judgment in a breach of contract suit.

Phyllis Locke, doing business as Paris Freight Company, entered into a contract with Mistletoe on October 18, 1984, which provided that Locke would perform a pickup and delivery service for Mistletoe at various locations in Texas. The contract term was one year from October 1, 1984. At the expiration of the initial term, the agreement would continue on a month-to-month basis until either party terminated it by thirty-day written notice.

In order to perform her contract, it was necessary for Locke to make certain investments and expenditures. In uncontroverted testimony, she stated that she spent $3,500.00 for materials to build a steel and pipe ramp and $1,000.00 for dirt work. She also borrowed $15,000.00, with which she purchased two vehicles for $9,000.00 and paid $6,000.00 for starting-up expenses. She testified that she would not have done any of these things had she not made the contract with Mistletoe. Locke's company never made a profit, although the losses decreased each month while the contract was in force.

On May 15, 1985, Mistletoe notified Locke that it planned to cancel the contract effective June 15, 1985. Locke closed her business and sold the vehicles for $6,000.00, taking a loss of $3,000.00. At the time of trial, Locke still owed $9,750.00 on her $15,000.00 loan, and had paid $2,650.00 in interest. She testified that the customized ramp was worth $500.00 as scrap. She considered the $1,000.00 expended for dirt work a lost expense.

The jury found Locke's damages at $19,-400.00. The court entered judgment for that amount, plus prejudgment interest and attorney's fees of $2,000.00.

Mistletoe's sole contention is that the trial court should have granted it a directed verdict or judgment notwithstanding the verdict, because there is no evidence to support the damages which the jury awarded. The gist of the argument is that the victim of a contract breach is only entitled to be placed in the position he would have been in had the contract been performed, and therefore Locke could only recover the profits she lost by reason of the breach.

■ It is a general rule that the victim of a breach of contract should be restored to the position he would have been in had the contract been performed. Determining that position involves finding what additions to the injured party's wealth have been prevented by the breach and what subtractions from his wealth have been caused by it. 5 *Corbin on Contracts* § 992 (1964). Where the contract requires a capital investment by one of the parties in order to perform, that party's reasonable expectation of profit includes recouping the capital investment. The expending party would not be in as good a position as if the contract had been performed if he is not afforded the opportunity, i.e., the full contract term, to recoup his investment. *Houston Chronicle Publishing Co. v. McNair Trucklease, Inc.*, 519 S.W.2d 924 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). To recover these expenditures they must have been reasonably made in performance of the contract or in necessary preparation. *Id.*, at 930.

The *Restatement (Second) of Contracts* § 349 (1981) states:

As an alternative to [expectation damages], the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed.

Further, in *Restatement (Second) of Contracts* § 349 comment a (1981), the authors of the Restatement state:

Under the rule stated in this Section, the injured party may, if he chooses, ignore the element of profit and *recover as damages his expenditures in reliance.* He may choose to do this ... in the case of a *losing contract,* one under which he would have had a loss rather than a profit. In that case, however, *it is open*

*to the party in breach to prove* the amount of the loss, to the extent that he can do so with reasonable certainty under the standard stated in § 352, and have it subtracted from the injured party's damages. (Emphasis added.)

Under these rules, Locke is entitled to the expenditures she incurred in order to perform her contract. Her uncontradicted testimony and exhibits prove the amounts of these damages.

■ Mistletoe's argument that Locke must show what her position would have been at the earliest time the contract could legally have been terminated is misplaced. Under the cited rules, she can recover her reliance expenditures because she was deprived of an opportunity to recoup those expenditures. Moreover, Mistletoe is not entitled to have Locke's losses deducted from the recovery, because Mistletoe had the burden to prove that amount, if any, and it did not do so. *Restatement (Second) of Contracts* § 349 comment a (1981).

■ There is no evidence, however, to support an award of $19,400.00. That figure includes both the loss from the resale of the vehicles which were purchased with the loan and the current balance of the loan. Locke's reliance damages were the amount of the loan ($15,000.00), less the amount recovered from the sale of the property purchased with the loan ($6,000.00). The resulting $9,000.00 should be added to the cost of the dirt work ($1,000.00) and the loss from the materials for the ramp ($3,000.00). Furthermore, Locke would be receiving a double recovery also if she recovers the full amount of the interest paid on the loan as well as the prejudgment interest allowed by the judgment.

For the reasons stated, the judgment of the trial court is reformed to award Locke damages in the sum of $13,000.00, plus prejudgment interest thereon for 910 days, plus attorney's fees of $2,000.00, as awarded in the original judgment. As reformed, the judgment of the trial court is affirmed.

1. A breach of contract may prevent a loss as well as cause one. Insofar as it prevents loss, the amount will be credited in favor of the

GRANT, Justice, concurring.

This case seems to violate the fundamental tenet of contract law that an injured party should not be put in a better position than if the contract had been performed. *See* E. Farnsworth, *Contracts* §§ 12, 16 (1982). The usual measure of damages for a breach of contract is the amount necessary to place the plaintiff in a financial position equivalent to that which she would have had if the contract had been fully performed by both parties. *Little Darling Corp. v. Ald, Inc.*, 566 S.W.2d 347 (Tex.Civ. App.—Dallas 1978, no writ). The outcome of the present case is surprising in light of Phyllis Locke's testimony that she had consistently lost money each month under the contract, and there was no projection to show that she would have made a profit during the last months of the contract. Thus, it appeared that Mistletoe Express might have saved her money by terminating the contract early.[1]

If the total past and projected loss under the contract had equaled or exceeded the unrecouped reliance costs, then Phyllis Locke would not have been entitled to a recovery for damages. However, the record contains no figures showing the amount of loss or how Phyllis Locke calculated the loss. As the majority correctly points out, the breaching party has the burden of proving that loss. The only exception would be when the loss figure is not available because of the fault of the party suffering the loss. The record in the present case does not show that the loss figure was not available. Since the amount of the loss is unknown, it cannot be used to negate the reliance damages.

wrongdoer. 5 *Corbin on Contracts* § 1038 (1964).