**Anita Rubio De La MORENA (Now Deceased), Robert Rubio, and Tina Rubio, Appellants,**

v.

**INGENIERIA E MAQUINARIA DE GUADALUPE, S.A., Appellee.**

No. 10–01–092–CV.

Court of Appeals of Texas, Waco.

Aug. 15, 2001.

Julius S. Staev, Law Offices of Julius S. Staev, Dallas, for appellants.

Robert F. Maris and Michael J. McKleroy, Jr., Maris & Lanier, P.C., Dallas, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

Ingenieria E Maquinaria De Guadalupe, S.A. ("Inmagusa") is a Mexican corporation which manufactures products by utilizing heavy equipment including hydraulic presses. In 1996, Inmagusa was in the market to buy a press. Appellants Anita Rubio De La Morena, Robert Rubio, and Tina Marie Rubio of Brownsville, Texas, bought and sold heavy equipment including hydraulic presses. Appellants learned of a used press for sale by a third-party. In 1997, they brokered a deal whereby Inmagusa would pay $200,000 for the press. In addition, Appellants agreed to be responsible for disassembling the press and having it loaded on rail cars for shipment to Mexico. The press weighed approximately 750,000 pounds.

Inmagusa claimed Appellants breached the contract by failing to have the press disassembled and loaded on rail cars. Inmagusa claimed it had to pay the third-party seller $86,350 to do this which should have been done by Appellants as part of the contract for no additional charge. Appellants countered that the contract required Inmagusa to provide the rail cars, which it had not done. Inmagusa disputed that the contract contained this provision. In 1998, Inmagusa filed a lawsuit to recover the $86,350 plus its attorney's fees. It claimed breach of contract and fraud. Appellants filed a general denial.

In September 2000, Inmagusa filed a Motion for Summary Judgment on its breach-of-contract claim. It attached fifteen documents as exhibits, including letters, excerpts from depositions, affidavits, and business records. Tina and Robert pro se filed a written response,[1] claiming that they had not disassembled the press and loaded it on to the rail cars because Inmagusa had failed to provide the rail cars as required by the contract. Tina and Robert attached their affidavits to the response in which they said it was Inmagusa's contractual duty to provide the rail cars, Inmagusa did not provide the rail cars or provided them late, and Inmagusa never notified them that the cars were

---

1. Anita died in January 2000.

available. They also alleged that Inmagusa hired a third-party to disassemble and load the press without giving Appellants an opportunity to do so, thereby incurring an unnecessary expenditure of $86,350. Tina and Robert also challenged the adequacy of Inmagusa's summary judgment evidence that Inmagusa paid the third-party $86,350, that the $86,350 was reasonable, and that the third-party completed the work. Finally, they challenged Inmagusa's plea for 10% prejudgment interest, claiming that 6% was the legal rate.

The trial court granted Inmagusa's motion and awarded it $86,350 in compensatory damages, $22,571.64 in prejudgment interest through October 31, 2000, $23.66 per day in prejudgment interest beginning November 1, 2000, and ending on the date of the signing of the summary judgment (December 14, 2000), $13,000 in attorney's fees for proceedings in the district court, $10,000 in attorney's fees for proceedings in the court of appeals, $5,000 in attorney's fees for proceedings in the Texas Supreme Court, postjudgment interest, and costs of court. Tina and Robert, this time represented by counsel, filed a motion for a new trial on January 12, 2001, which apparently was overruled by operation of law. Tex.R. Civ. P. 329b(c).

We note that the record shows that Anita died in January 2000. The record does not reflect that Inmagusa elected to join the personal representative, if any, of Anita's estate as a party through the "suggestion of death" and "scire facias" procedures provided in the rules of civil procedure. Tex.R. Civ. P. 152, 154, 155. Therefore, as a matter of law, the lawsuit proceeded against only Tina and Robert as defendants, and the summary judgment against Anita is void. *E.g., First Nat'l Bank in Dallas v. Hawn,* 392 S.W.2d 377 (Tex.App.—Dallas 1965, no writ).

On appeal, Tina and Robert assert that there were disputed fact issues on whether they breached the contract and on damages, either of which preclude a summary judgment, and that 10% is an erroneous rate for prejudgment interest in this case. We will reverse the judgment.

### The Summary Judgment

Appellants claim the summary judgment was improper because:

1. There was a disputed fact issue about whether Inmagusa had to provide the rail cars, which was a condition precedent to Appellants' obligation to disassemble and load the press; and

2. The summary judgment evidence was not adequate to establish that Inmagusa paid the third-party $86,350, that the $86,350 was reasonable, and that the third-party completed the work.

A party filing a motion for summary judgment must prove by summary-judgment evidence that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion." Tex.R. Civ. P. 166a(c); *e.g., Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Delta Air Lines, Inc. v. Norris,* 949 S.W.2d 422, 425 (Tex.App.—Waco 1997, writ denied). When we review for whether a disputed material fact issue exists, we must accept as true all evidence favorable to the non-movant. *Nixon,* 690 S.W.2d at 548–49; *Delta Air Lines,* 949 S.W.2d at 425. In addition, we must resolve all doubts and indulge every reasonable inference in favor of the non-movant. *Nixon,* 690 S.W.2d at 549; *Delta Air Lines,* 949 S.W.2d at 425. A summary judgment is reviewed *de novo. E.g., Rucker v. Bank One Texas, N.A.,* 36 S.W.3d 649, 653 (Tex.App.—Waco 2000, pet. filed).

### The Condition Precedent to Performance

■ Tina and Robert provided their summary judgment affidavits in which they said there was a contractual provision that Inmagusa was to provide the rail cars, the cars were never provided or were provided late, and they were never notified the cars were available. They claim a failure of a condition precedent to performance. Inmagusa did not address this issue in its summary judgment motion. Neither did Inmagusa plead in its petition that all conditions precedent had been performed or had occurred. Tex.R. Civ. P. 54. Therefore, Appellants were not required under Rule 54 to specifically deny in their answer that the condition had been performed.

■ A condition precedent to performance is an event that must happen or be performed before a right can accrue to enforce an obligation. *Centex Corp. v. Dalton,* 840 S.W.2d 952, 955 (Tex.1992). If a condition precedent to performance has not occurred, there is no breach of a contractual duty by the party accused of the breach. *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976). It is not disputed that Inmagusa did not provide rail cars to Appellants. Therefore, if it was Inmagusa's contractual duty to provide the rail cars, Appellants were not required under the contract to disassemble and load the press on to the rail cars, and they did not breach the contract.

The evidence that might create a dispute over whether it was Inmagusa's duty to provide the rail cars is contained in Tina's and Robert's summary judgment affidavits in which they claim that this duty was part of the contract. However, none of the written documents in the record contain or refer to this provision. One document in the record, a letter dated February 17, 1997, from Appellants to Inmagusa, tends to prove that the contract did not include the provision. It states: "Upon receipt of the total balance, we will need at least 2 (two) weeks to prepare for the removal of this machine. This time will be used to purchase materials needed for blocking and brazing. Also, to line up the railcars for loading. (Which we will need help with) If you have any contacts with the railroad lines in Monclova, We would appreciate your help in lining up these railcars." Inmagusa asserts that Appellants' representations in their affidavits that there was such a contractual provision cannot create a disputed fact issue because (1) the statute of frauds requires the contractual provision alleged by Appellants to be in writing, (2) parol evidence is not allowed to prove the existence of the contractual provision, and (3) Tina's and Robert's affidavits are self-serving and are improper summary judgment evidence.

### Statute of Frauds

Inmagusa refers us to the Uniform Commercial Code—Sales ("U.C.C."). Tex. Bus & Com.Code Ann. ch. 2 (Vernon 1994). The chapter governs the sale of goods. Section 2.201 says in part:

Formal Requirements; Statute of Frauds

(a) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

. . .

(c) A contract which does not satisfy the requirements of Subsection (a) but which is valid in other respects is enforceable.

. . .

(3) with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2.606).

*Id.* at § 2.201. Acceptance of goods under section 2.606 occurs when the buyer "... does any act inconsistent with the seller's ownership...." *Id.* at § 2.606(a)(3).

■ There is no one document in the record which can be called "the contract." Rather, "the contract" is comprised of approximately a half-dozen letters and billing statements. Inmagusa points out that there is nothing in these written records which expressly states that Inmagusa must supply the rail cars, and therefore, because of the statute of frauds in section 2.201, Appellants cannot enforce such a provision.

However, section 2.201 provides two exceptions to the "in writing" requirement. First, a "writing is not insufficient because it omits or incorrectly states a term agreed upon...." *Id.* at § 2.201(a). It is clear that every provision in the contract does not have to be reduced to writing. *E.g., Hideca Petroleum Corp. v. Tampimex Oil Intern., Ltd.,* 740 S.W.2d 838, 845 (Tex. App.—Houston [1st Dist.] 1987, no writ). The second exception applies "with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2.606)." *Id.* §§ 2.201(c)(3), 2.606(a)(3). Here, Inmagusa paid the $200,000 to Appellants (February 1997) before it paid the $86,350 to the third-party (June 1997). It hired a third-party to disassemble and load the press on rail cars and had it shipped to Mexico. Thus, under "(c)(3)," the statute of frauds does not apply to this transaction. *E.g.,*

*Stone v. Metro Restaurant Supply, Inc.,* 629 S.W.2d 254, 257 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.).

*Parol Evidence*

■ Inmagusa next relies on the parol evidence rule in section 2.202 of the U.C.C., which says:

Final Written Expression: Parol or Extrinsic Evidence

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(1) by course of dealing or usage of trade (Section 1.205) or by course of performance (Section 2.208); and

(2) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

TEX. BUS & COM.CODE ANN. § 2.202 (Vernon 1994).

■ This section applies when there is a written memorandum containing a contractual provision. In that event, parol evidence may not be offered to contradict the written provision, although parol evidence of "consistent additional terms" is allowed. *E.g., Conner v. May,* 444 S.W.2d 948, 953 (Tex.App.—Austin 1969, writ ref'd n.r.e.). However, in this case, there is no written provision about whether or not Inmagusa was to provide the rail cars. Section 2.202 does not apply. Rather, the issue here is whether there was an agreement not expressly stated in the written documents which requires Inmagusa to supply the rail

cars. Because an agreement as to who had the duty to provide the rail cars does not contradict any written provision of the contract, parol evidence is admissible about the alleged provision.

### The Affidavits

Finally, Inmagusa asserts that Tina's and Robert's affidavits are conclusory and self-serving. Inmagusa cites to Rule 166a(c), which states in part: "A summary judgment may be based on uncontroverted testimonial evidence of an interested witness ... if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX.R. CIV. P. 166a(c). There are no objections from Inmagusa in the record to Appellants' summary judgment response or affidavits.[2] TEX.R. CIV. P. 166a(f). However, an objection to the substance of an affidavit, *e.g.,* that it is conclusory, can be raised for the first time on appeal. *Crow v. Rockett Special Utility District,* 17 S.W.3d 320, 324 (Tex.App.—Waco 2000, pet. denied); *Rizkallah v. Conner,* 952 S.W.2d 580, 587 (Tex.App.—Houston [1st Dist.] 1997, no writ).

By its express language, the part of Rule 166a(c) relied on by Inmagusa does not apply to a non-movant's affidavit. That part specifically refers to the evidence on which a summary judgment "may be based." Tina's and Robert's affidavits are not the basis of the summary judgment. The propriety of their affidavits is governed by the general rule in 166a(f) that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to

the matters stated therein." TEX.R. CIV. P. 166a(f).

Tina's and Robert's affidavits (which are identical) are not entirely conclusory. For example, they state:

- "It was further the parties agreement that Inmagusa would have the responsibility of providing the rail cars and for shipping of the press once it was loaded and secured onto the rail cars by Defendants."

- "I and the other Defendants were ready, willing, and able to perform the agreed upon disassembly and loading of the press onto rail cars should they have been provided by Inmagusa."

- "[O]nce the rail cars were delivered late to the shipping point, Inmagusa completely failed or refused to notify Defendants that the rail cars had arrived or to give Defendants an opportunity to perform the disassembly and loading. Defendants never gained any knowledge that the cars were delivered to the shipping point."

These statements of fact based on personal knowledge from witnesses competent to testify are proper summary judgment evidence. TEX.R. CIV. P. 166a(f).

### Conclusion

Tina's and Robert's summary judgment affidavits were admissible on the issue of the condition precedent to performance. Furthermore, they are sufficient to show disputed fact issues about whether it was part of the contract that Inmagusa would provide the rail cars, and if so, whether Inmagusa failed to do so. Therefore, summary judgment was improper. This issue is sustained.

**2.** Inmagusa asserts in its brief that "numerous written objections" were filed, but some-

how they "disappeared from the clerk's record."

### Damages

██ Appellants also complain that Inmagusa's summary judgment evidence was insufficient to prove that Inmagusa paid the third-party $86,350, that the $86,350 was reasonable, and that the third-party completed the work. On appeal, Inmagusa claims that this is an affirmative defense of "failure to mitigate damages," and that because Appellants filed only a general denial, Appellants are barred from raising this defense. Rule 94 requires that affirmative defenses be contained in a party's pleadings. TEX.R. CIV. P. 94. However, there are no objections from Inmagusa in the record to Appellants' summary judgment response or affidavits. An unpled affirmative defense, properly supported by summary judgment evidence, which is not objected to in the trial court can defeat a summary judgment. *Patterson v. First Nat'l Bank*, 921 S.W.2d 240, 244 (Tex.App.—Houston [14th Dist.] 1996, no writ) (citing *Womack v. Allstate Ins. Co.*, 156 Tex. 467, 296 S.W.2d 233, 237 (1956)); *cf. Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 494–95 (Tex. 1991) (an unpled affirmative defense can serve as the basis for granting a summary judgment if it is raised in the summary judgment motion and the opposing party does not object). This follows the language in the summary judgment rule: "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX.R. CIV. P. 166a(c); *Roark*, 813 S.W.2d at 495. In addition, Rule 67 allowing trial by consent of unpled issues applies in summary judgment cases. TEX.R. CIV. P. 67; *Roark*, 813 S.W.2d at 495. Therefore, because Inmagusa did not object in the trial court, the affirmative defense could be raised in the summary judgment proceedings.

However, because we reverse the summary judgement on the "condition precedent" issue, we will not address damages.

### PREJUDGMENT INTEREST

Appellants also complain that the trial court erred in using ten percent to calculate prejudgment interest. They want to apply section 302.002 of the Finance Code which calls for a rate of six percent if, as here, there is not an agreed rate of interest in the contract. TEX. FIN.CODE ANN. § 302.002 (Vernon Supp.2001). However, this statute is inapplicable here. It is included under a subchapter in the Finance Code entitled "Usurious Interest." But Inmagusa is attempting to be compensated for damages it says it incurred when Appellants did not perform under the contract. Therefore, the common law controls.

██ Prejudgment interest is calculated as simple interest and is based on the postjudgment interest rate applicable at the time of judgment. *Johnson & Higgins, Inc. v. Kenneco Energy*, 962 S.W.2d 507, 532 (Tex.1998); TEX. FIN.CODE ANN. § 304.103 (Vernon Supp.2001). Postjudgment interest is calculated as "the auction rate quoted on a discount basis for 52 week treasury bills issued by the United States government as most recently published by the Federal Reserve Board before the date of computation," but it can never be less than ten percent or more than twenty percent. TEX. FIN.CODE ANN. § 304.003(c) (Vernon Supp.2001). Prejudgment interest accrues on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed. *Johnson & Higgins*, 962 S.W.2d at 531.

The trial court correctly calculated prejudgment interest. However, because we reverse the summary judgment, the award is set aside.

## CONCLUSION

We reverse the summary judgment and remand the cause for further proceedings.