ANN CRAWFORD McCLURE, Chief Justice
Following a bench trial, the trial court found that Mountain Vista Builders had breached its contract with Jose M. Siam and Lina Siam, in which Mountain Vista had agreed to sell the Siams a house to be built in its subdivision. The final judgment awarded the Siams various items of damages, together with prejudgment interest, but denied the Siams' request for an award of attorney's fees, and further denied their request for the travel expenses they allegedly incurred in performing the contract. The Siams argue that the trial court abused its discretion by failing to make an award of attorney's fees, by not calculating the amount of prejudgment interest from the date they filed their original petition, and by failing to award them damages for their travel expenses.[1] We conclude that the trial court properly denied the Siams their travel expenses, and therefore affirm the trial court's award of damages, but reform the judgment to include the following: (1) an award of attorney's fees, in the amount requested by the Siams in the trial court; and (2) an award of prejudgment interest calculated to run from the date that the Siams first filed their lawsuit.
FACTUAL BACKGROUND
On August 6, 2005, the Siams, both of whom were California residents, signed a written contract with Mountain Vista to purchase a home to be built by Mountain Vista in a subdivision it was developing in El Paso, for the sales price of $145,450.[2] Although the parties later modified the contract to have the home built on a different lot in the subdivision, the terms and conditions of the contract remained the same. The Siams paid a $500 deposit on the home, as well as an additional $2,510 for custom changes to the home.
In January of 2006, the Siams paid for an appraisal on the property and secured a title commitment from a title company. In addition, in April of 2006, the Siams, who had previously been pre-approved for a loan from an independent lender in September *508 of 2005, received a good faith estimate from their lender, indicating that they had been approved for a loan in the amount of $131,159.
In the meantime, for reasons that are not clear from the record, Mountain Vista believed the Siams were having difficulty securing a loan, and were not "strong" buyers, and therefore began taking back-up offers from other buyers in March of 2006.[3] In addition, in April of 2006, Mountain Vista received a new appraisal on the home, indicating that the home's value had gone up to $161,000. For reasons that are again unclear from the record, Mountain Vista "cancelled" the contract with the Siams sometime in April or May of 2006, apparently without notifying the Siams of the cancellation.
Unaware that Mountain Vista was considering cancelling their contract, the Siams traveled to El Paso to conduct a move-in inspection of the home on May 1, 2006. After inspecting the home, Jose Siam signed a move-in inspection report, noting certain unsatisfactory conditions with the home, including the fact that the custom changes they had paid for had not been made. On that same date, a representative from Mountain Vista, who was apparently also unaware of the cancellation, signed the report and provided the Siams with a copy of a warranty manual for the home. Shortly thereafter, on May 3, 2006, the City of El Paso issued a certificate of occupancy for the home. The Siams traveled to El Paso to close on the home on two separate occasions, first on May 8, 2006 and later on May 12, 2006. However, pursuant to instructions from Mountain Vista, the title company refused to close on the sale.[4] Mountain Vista thereafter signed a contract with another buyer on May 15, 2006, for a total sales price of $166,950, approximately $21,000 over the original sales price in the Siams' contract.
The Siams' Lawsuit
The Siams thereafter retained an attorney and filed their lawsuit against Mountain Vista on September 15, 2006, raising claims of breach of contract, fraud, and unjust enrichment. After receiving several continuances of scheduled trial dates, the Siams' original attorney withdrew in February of 2014, and the Siams thereafter retained their current attorney in January of 2014. The Siams' current attorney filed two amended petitions, the first on August 25, 2014, and the second on October 16, 2014, claiming breach of contract and unjust enrichment, and seeking damages, as well as attorney's fees, together with both prejudgment and postjudgment interest. As part of their request for damages, the Siams sought reimbursement for the travel expenses they allegedly incurred in traveling to and from El Paso in an attempt to perform the contract.
Following a two-day bench trial, the trial court entered a final corrected judgment on February 19, 2015, finding that Mountain Vista had breached its contract with the Siams, and awarding the Siams damages in the amount of $24,835, together with prejudgment interest to run from *509 January 2014, in the sum of $1,345.23, and postjudgment interest calculated at the rate of 5 percent per annum. At the Siams' request, the trial court thereafter entered findings of fact and conclusions of law in which it found that the parties had a valid contract, which Mountain Vista had breached by its unilateral decision to cancel the contract and to sell the property to another buyer. The trial court further found that the Siams had presented sufficient evidence to justify all of the items of damages they requested with the exception of their travel expenses, finding that they had failed to present any "credible" testimony or evidence to support an award of those expenses.[5] The trial court also stated in its conclusions of law that it believed it had the discretion to make an award of no attorney's fees under Chapter 38.001(8) of the Texas Civil Practice and Remedies Code. And finally, the trial court re-affirmed its decision that prejudgment interest would begin to accrue on January 1, 2014, rather than the date the Siams filed their original petition.
The Siams filed a motion for reconsideration of the trial court's final judgment, as well as a motion for new trial, in which they alleged that they were entitled to an award of attorney's fees, and that they were also entitled to be reimbursed for their travel expenses. In their motion for new trial, they raised those same arguments, and further argued that the trial court had erred in determining the amount of prejudgment interest to be awarded. Following a brief hearing, the trial court denied the motion for reconsideration, and the motion for new trial was denied by operation of law.[6] This appeal followed.
In three issues, the Siams assert that the trial court erred by: (1) refusing to make an award of attorney's fees; (2) failing to calculate the amount of prejudgment interest from the date they filed their original petition; and (3) refusing to award them damages for their travel expenses.
THE REFUSAL TO AWARD ATTORNEY'S FEES
In their first issue, the Siams contend that the trial court had no discretion to refuse its request for an award of fees pursuant to section 38.001(8) of the Texas Civil Practice and Remedies Code, as they presented clear and uncontradicted evidence of the reasonableness and necessity of the attorney's fees they incurred in successfully litigating their lawsuit. We agree.
The Right to an Award of Attorney's Fees
A prevailing party cannot recover attorney's fees unless permitted by statute or contract. See Tony Gullo Motors I, L.P. v. Chapa , 212 S.W.3d 299, 310 (Tex. 2006). In the present case, the parties' contract did not contain an agreement pertaining to attorney's fees, and we therefore look to section 38.001 of the Texas Civil Practice and Remedies Code to determine whether the Siams were entitled to an award of such fees. Section 38.001 provides that a "person may recover reasonable *510 attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... (8) an oral or written contract." See TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(1) - (3), (8) (West 2015). Although this statute uses the term, "may," the Texas Supreme Court has held that a trial court has no discretion to deny an award of reasonable and necessary attorney's fees under this statute when presented with evidence of the same. See Bocquet v. Herring , 972 S.W.2d 19, 20 (Tex. 1998) ; see also Ventling v. Johnson , 466 S.W.3d 143, 154 (Tex. 2015) (discussing an award of attorney's fees on appeal). Thus, while a trial court has the discretion to determine the amount of reasonable and necessary attorney's fees, it has no discretion to award a party no fees when presented with credible evidence of the amount of attorney's fees a party incurred. See Ventling , 466 S.W.3d at 155 ; see also Midland W. Bldg. L.L.C. v. First Serv. Air Conditioning Contractors, Inc., 300 S.W.3d 738, 739 (Tex. 2009) (per curiam) (award of no attorney's fees in action on a sworn account was improper in the absence of evidence affirmatively showing that no attorney's services were needed or that any services provided were of no value).
Ordinarily, the reasonableness of the amount of an attorney's fee award is left to the fact finder, and a reviewing court may not substitute its judgment on the amount to be awarded for the judgment of the fact finder. See Smith v. Patrick W.Y. Tam Trust , 296 S.W.3d 545, 547 (Tex. 2009) (citing Ragsdale v. Progressive Voters League , 801 S.W.2d 880, 881 (Tex. 1990) (per curiam)); see also Bocquet , 972 S.W.2d at 21 (noting that reasonableness and necessity of attorney's fees are "question[s] of fact for the jury's determination"). However, when an attorney submits evidence of his fees, and that evidence is clear, direct and positive, and not contradicted by any other witness or attendant circumstances, and is otherwise free from "contradiction, inaccuracies and circumstances tending to cast suspicion thereon an appellate court may exercise its discretion and render judgment for attorney's fees in the interest of judicial economy" without the necessity of remanding the matter to the trial court for a new trial on that issue See Ragsdale , 801 S.W.2d at 882 (where prevailing party's attorney presented clear, direct, positive and uncontroverted testimony regarding his services and the reasonableness of the fees charged in the amount of $22,500, court reversed trial court's award of only $150 in attorney's fees, and rendered judgment awarding fees in the amount submitted); see also In re Guardianship Estate of Del Campo , 346 S.W.3d 701, 703-04 (Tex.App.-El Paso 2009, no pet.) (court reformed the trial court's judgment to include an award of attorney's fees in the amount requested by the prevailing party, where it presented clear and uncontradicted evidence of the fees incurred, and there was nothing in the record to call into question the reasonableness of the amount requested); Elias v. Mr. Yamaha, Inc., 33 S.W.3d 54, 62-64 (Tex.App.-El Paso 2000, no pet.) (court reformed the trial court's judgment to reflect the full amount of attorney's fees requested by prevailing party where none of the surrounding circumstances of the case indicated that the amount requested was "incredible or unreasonable").
However, even when the evidence of attorney's fees presented in the trial court was uncontradicted, an appellate court may not reverse and render judgment awarding attorney's fees if the evidence is otherwise "unreasonable, incredible, or its belief is questionable[.]" See Patrick W.Y. Tam Trust, 296 S.W.3d at 547-48 (citing *511 Ragsdale , 801 S.W.2d at 882 ); see also Hudspeth County Underground Water Conservation Dist. No. 1 v. Guitar Holding Co., L.P., 355 S.W.3d 428, 438 (Tex.App.-El Paso 2011, pet. denied) (given the relative success of both parties, the trial court had discretion to find that a portion of the attorney's fees requested by one of the parties was "unnecessary or excessive"). In that instance, the appellate court should instead remand the matter to the trial court for a new trial on the issue of attorney's fees. See Patrick W.Y. Tam Trust, 296 S.W.3d at 548-49 (where the proper amount was subject to dispute, court of appeals should have ordered new trial on the amount of attorney's fees to be awarded, rather than reforming trial court's award of attorney's fees to include the full amount requested by prevailing party).
The Siams Presented Clear and Uncontradicted Evidence of their Attorney's Fees
In all of their trial court pleadings, the Siams consistently requested an award of attorney's fees pursuant to section 38.001 of the Texas Civil Practice and Remedies Code, based on Mountain Vista's breach of contract. In support of their request, at trial, the Siams' attorney, Robert Skipworth, testified that he had been actively practicing law in the field of civil litigation since he was first licensed to practice in 1971, was board certified in civil trial law, and had an expertise in real estate and breach of contract cases. Skipworth testified that he was initially retained by the Siams to represent them in this matter in January of 2014, and that pursuant to their agreement, he billed them at $300 an hour, which was his standard rate for civil litigation in a case if this nature, as it was in his area of expertise. In addition, Skipworth submitted his "client ledger" into evidence, without objection from opposing counsel, chronicling the work he had performed for the Siams beginning on January 21, 2014, until the morning of the second day of the two-day trial, which was held on October 27, 2014 and November 19, 2014. Skipworth also testified that as of the end of the first day of trial, his fees totaled $16,530, equating to approximately 55 hours of work performed. Opposing counsel declined to cross-examine Skipworth, and Mountain Vista made no attempt to dispute Skipworth's testimony regarding the reasonableness of either his hourly fee rate or the number of hours that he spent working on the Siams' case.[7]
Based on our review of the record, we conclude that the evidence presented by Skipworth was clear and direct, and free from contradiction or inaccuracies. Further, there is nothing in the record or the attendant circumstances to suggest that the amount of the fees requested was unreasonable, incredible, or questionable. To the contrary, Skipworth achieved an unquestionably positive result for his client, and there is nothing in the trial court's findings of fact or conclusions of law to suggest that it believed Skipworth's fees were unreasonable under the circumstances, or that Skipworth lacked veracity when he testified to the amounts that he billed. Instead, it appears that the trial court declined to grant attorney's fees based solely on its mistaken belief that it had the discretion to deny an award of fees pursuant to *512 section 38.001 of the Texas Civil Practice and Remedies Code. Because the trial court lacked the discretion to deny an award under these circumstances, we conclude that the trial court abused its discretion in failing to award attorney's fees to the Siams.
Similarly, given the clear and uncontroverted nature of the evidence, and the lack of any evidence that would cause us to find that the amount requested by Skipworth was either unreasonable or unjustified, we conclude that it is appropriate to reform the trial court's judgment to reflect the amount of fees the Siams have requested. In calculating this amount, we take into consideration Skipworth's testimony that his attorney's fees as of the first day of trial totaled $16,530, as well as his testimony that he was entitled to an additional 4 ½ hours of fees for representing the Siams on the second day of trial. At his billing rate of $300 an hour, this additional time for the second day of trial amounts to an additional $1,350, for a total of $17,880, as requested by the Siams. We sustain Issue One, reverse the denial of attorney's fees, and render judgment awarding attorney's fees to Appellants in that amount.
THE AWARD OF PREJUDGMENT INTEREST
In their second issue, the Siams contend that the trial court erred when it ruled that prejudgment interest on their judgment would begin to accrue in January of 2014, the month that they retained their current attorney, rather than from the day the Siams filed their original complaint on September 15, 2006. The Siams contend that they are entitled to an award of prejudgment interest for a period of eight years and five months, to accrue from the date they filed their original petition in September of 2006 until the trial court signed its final judgment in February of 2015, with interest accruing at the rate of 10 percent per annum, computed as simple interest, for a total of $20,911.20. As explained below, we agree with the Siams that they are entitled to an award of prejudgment interest for this period of time, but we disagree with the interest rate to be utilized in calculating the amount owed, and we instead conclude that prejudgment interest should accrue at a rate of 5 percent, per annum, computed as simple interest.
Determining when Prejudgment Interest Begins to Run
The Texas Supreme Court has long recognized that prejudgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." See Johnson & Higgins of Tex. Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 528 (Tex. 1998) (citing Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549, 552 (Tex. 1985) ); see also Long v. Castle Tex. Prod. Ltd. P'ship, 426 S.W.3d 73, 77 (Tex. 2014) (both prejudgment interest and postjudgment interest compensate judgment creditors for the lost use of their money due as damages); Matthews v. DeSoto, 721 S.W.2d 286, 286-87 (Tex. 1986) (recognizing that prejudgment interest is intended to compensate a plaintiff for being denied the opportunity to invest and earn interest on the amount of damages). An award of prejudgment interest can be based on either general principles of equity or an enabling statute. Kenneco Energy, Inc., 962 S.W.2d at 528 (citing Cavnar, 696 S.W.2d at 552 ; Phillips Petroleum Co. v. Stahl Petroleum Co., 569 S.W.2d 480, 483-85 (Tex. 1978) ). The Legislature has provided an enabling statute for prejudgment interest, but that statute is only applicable to cases involving wrongful death, personal injury and property damages. See TEX. FIN. CODE ANN. § 304.101 (West 2016) ("This *513 subchapter applies only to a wrongful death, personal injury, or property damage case of a court of this state."). In cases not falling within one of those three categories, a court must apply equitable common law principles in considering an award of prejudgment interest. Lee v. Lee , 47 S.W.3d 767, 799-800 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citing Kenneco Energy Inc. , 962 S.W.2d at 530 ).
Under common law principles, prejudgment interest begins to accrue "on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed." Kenneco Energy, Inc. , 962 S.W.2d at 531 ; see also Matthews, 721 S.W.2d at 286-87 (citing Cavnar, 696 S.W.2d at 554 ; see also DaimlerChrysler Motors Co., LLC v. Manuel, 362 S.W.3d 160, 194 (Tex.App.-Fort Worth 2012, no pet.) ) (in a breach-of-contract case, prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim, or (2) the date suit is filed.).[8] In addition, the Texas Supreme Court has expressly held that when prejudgment interest is awarded based on common law equitable principles, a trial court may not reduce or eliminate a plaintiff's prejudgment interest award because of delays caused by either party in resolving a case; this is true even if the trial court believes the plaintiff may have engaged in dilatory tactics or acted in bad faith in preventing a timely resolution of the lawsuit. Matthews, 721 S.W.2d at 287. As the Court has explained, because the intended goal of prejudgment interest is to make a plaintiff whole and to compensate him for the lost use of his funds while his case is pending, rather than to punish the defendant, a "dilatory penalty" would not advance that goal; therefore, regardless of how long the delay lasts or the reasons for the delay, the fact remains that the plaintiff is "still deprived of the use of his funds for which he deserves full recompense" while his case is pending until a final judgment is entered.[9] Matthews , 721 S.W.2d at 287 (citing Cavnar, 696 S.W.2d at 552, 554 ); see also Brainard v. Trinity Universal Ins. Co., 216 S.W.3d 809, 812 (Tex. 2006) (recognizing that prejudgment interest is awarded to fully compensate the injured party, not to punish the defendant). Moreover, the Court has recognized that the common law prejudgment interest scheme does not create incentives for a plaintiff to unnecessarily delay resolving his case in an attempt to receive additional prejudgment interest, as "[f]ew if any plaintiffs would prefer to have defendants retain their funds in order to increase the amount of interest instead of obtaining the full compensation to which they are entitled as quickly as possible." Matthews, 721 S.W.2d at 287 (citing Cavnar, 696 S.W.2d at 554 ).
Although the trial court in the present case did not explain its reasoning for determining that prejudgment interest should run from January of 2014, when the Siams retained their new attorney, rather *514 than from the date on which they filed their original petition in September of 2006, we can only assume that the trial court chose to do so due to the almost eight-year delay that occurred before the Siams took affirmative steps to resolve their lawsuit. However, under the above-described common law principles, it was improper for the trial court to take those delays into consideration in reducing an award of prejudgment interest. Instead, as set forth above, the trial court was required to calculate the amount of prejudgment interest from the "earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed." See Kenneco Energy, Inc. , 962 S.W.2d at 531. As it is unclear when Mountain Vista first received written notice of the claim, we conclude that prejudgment interest began to accrue on September 15, 2006, the date on which the Siams first filed their original petition, until the trial court entered its final corrected judgment on February 19, 2015, a period of 8 years and 5 months. The only remaining question is the rate at which the prejudgment interest should be calculated.
Calculating the Proper Interest Rate
When the interest rate is not specified in a contract, prejudgment interest in a breach of contract case is calculated as simple interest and is based on the postjudgment interest rate applicable at the time of judgment. See Kenneco Energy, Inc., 962 S.W.2d at 532 ; De La Morena v. Ingenieria E Maquinaria De Guadalupe, S.A. , 56 S.W.3d 652, 659 (Tex.App.-Waco 2001, no pet.) ; see also Lee , 47 S.W.3d at 800 (in accordance with Kenneco , in a breach of contract case, prejudgment interest accrues at the rate for postjudgment interest and it is to be computed as simple interest). Section 304.003 of the Texas Finance Code provides the applicable rate for calculating postjudgment interest, and we look to that same interest rate in calculating prejudgment interest as well. See ExxonMobil Corp. v. Valence Op. Co., 174 S.W.3d 303, 319-20 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (applying section 304.003 in calculating prejudgment interest in a breach of contract case); De La Morena , 56 S.W.3d at 659 (recognizing that the interest rate set forth in section 304.003 of the Finance Code is the proper rate to use for calculating prejudgment interest rate in breach of contract case); Tips v. Hartland Developers, Inc., 961 S.W.2d 618, 624-25 (Tex.App.-San Antonio 1998, no pet.) (where the parties' contract did not specify an interest rate, court applied section 304.003 in calculating prejudgment interest in a breach of contract case). Further, an appellate court may determine the proper interest rate to be applied under this statute in calculating prejudgment interest and reform a trial court's judgment accordingly. See Garden Ridge, L.P. v. Clear Lake Ctr., L.P., 504 S.W.3d 428, 452-53 (Tex.App.-Houston [14th Dist.] 2016, no pet.) (applying statutory rate of 5 percent to calculate prejudgment interest owed on judgment in breach of contract case, and reforming judgment accordingly).
Section 304.003(c) provides that a money judgment earns postjudgment interest at one of the three following rates: (1) the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation; (2) 5 percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System described by Subdivision (1) is less than 5 percent; or (3) 15 percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System described by Subdivision (1) is more than 15 percent. TEX. FIN. CODE ANN. § 304.003 (West 2016). In the present case, the trial court set the postjudgment *515 interest rate at 5 percent, in accordance with section 304.003(c)(2).
The Siams contend that we should apply a 10 percent interest rate in calculating prejudgment interest; their argument appears to be based on a former version of section 304.003, which utilized an interest rate of 10 percent rather than 5 percent in its standards for calculating postjudgment interest. See, e.g., Tips, 961 S.W.2d at 624-25 (applying a 10 percent interest rate based on section 304.003, as it existed at the time of judgment). We note, however, that the Texas Legislature modified this Code provision during the 2003 legislative session substituting the 5 percent figure for the 10 percent figure, well before the judgment in this case was entered. See Acts 2003, 78th Leg., ch. 676, § 1, eff. June 20, 2003, entitled "An Act relating to the postjudgment interest rate." As such, we conclude that the 5 percent interest rate that the trial court utilized in calculating postjudgment interest is the proper interest rate to be applied in calculating prejudgment interest as well.
Calculating prejudgment interest on the trial court's judgment of $24,835, at a 5 percent simple interest rate for eight years and five months (101 months), gives a total of $10,451.40. We sustain Issue Two in part and modify the trial court's judgment to include an award of prejudgment interest in that amount.
THE SIAMS' TRAVEL EXPENSES
In their third and final issue, the Siams argue that the trial court erred in refusing to award damages for the travel expenses, which they allegedly incurred in attempting to perform the contract, in an amount totaling $3,879.89.[10] The Siams contend that they presented uncontroverted evidence of those expenses, and that the trial court was therefore required to award them those expenses as reliance damages. Because we believe that awarding travel expenses to the Siams in this instance would result in a double recovery, we disagree.
Double Recovery Prohibited
The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained. See Abraxas Petroleum Corp. v. Hornburg , 20 S.W.3d 741, 760 (Tex.App.-El Paso 2000, no pet.) (citing Stewart v. Basey, 150 Tex. 666, 245 S.W.2d 484, 486 (1952) ; Stamp-Ad, Inc. v. Barton Raben, Inc., 915 S.W.2d 932, 936 (Tex.App.-Houston [1st Dist.] 1996, no writ) ). Under this rule, a party generally should be awarded neither less nor more than his actual damages. Id. (citing Stewart, 245 S.W.2d at 486 ).
"American law has traditionally recognized three damages measures for breach of contract: expectancy, reliance, and restitution." See Quigley v. Bennett, 227 S.W.3d 51, 56 (Tex. 2007) ; see also Abraxas Petroleum Corp. , 20 S.W.3d at 760 ("Damages for breach of contract protect three interests: a restitution interest, a reliance interest, and an expectation interest."). Reliance damages entitle a plaintiff to be reimbursed for the out-of-pocket expenditures that were caused by his reliance on the contract, in order to put him in the same position he would have been in if the contract had not been made. Quigley , 227 S.W.3d at 56 n.1 (Brister, J., concurring in part & dissenting in part) (citing *516 Restatement (Second) of Contracts § 344 (1981) ); Sharifi v. Steen Auto., LLC , 370 S.W.3d 126, 149 (Tex.App.-Dallas 2012, no pet.) (reliance damages reimburse a plaintiff for expenditures made towards the execution of the contract in order to restore the status quo before the contract). Under this measure of damages, plaintiffs are entitled recover the "expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed." Mistletoe Exp. Serv. of Oklahoma City, Okl. v. Locke, 762 S.W.2d 637, 638 (Tex.App.-Texarkana 1988, no writ) (allowing for the recovery of capital expenditures plaintiff made as reliance damages, which included purchases of vehicles, in furtherance of contract to provide freight services to the defendant, less the amounts the plaintiff recouped by selling the trucks). On the other hand, expectancy damages, similar to benefit-of-the-bargain damages, award damages "for the reasonably expected value of the contract." Sharifi, 370 S.W.3d at 148 (citing Foley v. Parlier, 68 S.W.3d 870, 884 (Tex.App.-Fort Worth 2002, no pet.) ); see also SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Sci., Inc., 128 S.W.3d 304, 317 n.6 (Tex.App.-Dallas 2004, no pet.) (benefit-of-the-bargain damages seek to restore the non-breaching party to the same economic position it would have been in had the contract been performed).
However, a plaintiff may not receive both forms of damages; thus, if a plaintiff chooses to recover his reliance damages for his out-of-pocket expenses, he may not also recover damages for his expectancy damages, i.e., for the profits or benefits he would have received if the contract had been performed, as allowing for both forms of damages would result in an impermissible double recovery. See Sharifi, 370 S.W.3d at 151 ; Mistletoe Exp. Serv. of Oklahoma City, Okl., 762 S.W.2d at 638 (citing The Restatement (Second) of Contracts § 349 (1981) ). For example, in Sharifi , the plaintiff had entered into a contract with the defendant to purchase an automotive repair business, and in reliance on the contract, the plaintiff incurred expenses for undergoing a training program to prepare him to run the business. Sharifi, 370 S.W.3d at 151-52. The trial court found that the defendant had breached the contract, and awarded the plaintiff the equivalent of the profits he would have received for a year if the contract had been performed, i.e., his lost profits, as well as his out-of-pocket expenses made in reliance on the contract, including his training expenses. Id. at 139. The Dallas Court of Appeals, however, concluded that the plaintiff could not receive compensation for both, as a "party cannot both 'retain all the benefits of the transaction and escape all of the obligations.' " Id. at 151 (citing Foley v Parlier, 68 S.W.3d 870, 885 (Tex.App.-Fort Worth 2002, no pet.)). As the court explained, a "party is entitled to sue and seek damages on alternative theories but is not entitled to recover on both theories; to do so is considered equivalent to a 'double recovery.' " Id. ; see also Mistletoe Exp. Serv., 762 S.W.2d at 638 (recognizing that a nonbreaching party may recover capital investments she made in furtherance of performing a contract, but may not also recover her lost profits under the contract); Foley , 68 S.W.3d at 884-85 (recognizing that a plaintiff seeking damages for breach of contract could not recover both his lost profits for a breach of contract, as well as his reliance damages, such as the moving expenses he had incurred in performing the contract, as doing so would result in an impermissible "double recovery").
*517 In the present case, the trial court's judgment was based primarily on the Siams' lost profits, or benefit-of-the-bargain damages, i.e., the difference in the price set forth in their contract with Mountain Vista for the purchase of the home, and the price that Mountain Vista received from the third-party who ultimately purchased the home. Therefore, the Siams were not entitled to also recover the travel expenses they incurred in reliance on the contract, as doing so would allow them to retain all of the benefits of the contract, yet escape all of its obligations, thereby leading to an impermissible double recovery. We overrule Issue Three.
We affirm the trial court's judgment denying the Siams their travel expenses, and awarding damages to the Siams in the amount of $24,835. However, we modify the portion of the judgment awarding no attorney's fees, and reform it to reflect an award of attorney's fees in the sum of $17,880, the amount requested by the Siams in the trial court. We also modify the portion of the trial court's judgment awarding prejudgment interest beginning January 2014, and reform it to reflect an award of prejudgment interest for a period of eight years and five months, running from the date the original petition was filed in September of 2006, until the date the judgment was signed in February of 2015, at an interest rate of 5 percent, simple interest, for a prejudgment interest award totaling $10,451.40. The judgment of the trial court is affirmed as reformed.
Hughes, J., not participating

Appellee did not file a responsive brief.

The record reflects that Jose Siam was a real estate broker in California who had real estate investments in various locations including El Paso.

Mountain Vista's co-owner, Michael Santa Maria, testified at trial that he could not recall exactly why or how Mountain Vista came to that conclusion, and Jose Siam testified that Mountain Vista never contacted them to check on their loan status.

At trial, Santa Maria testified that he believed the Siams were not prepared to close on the sale, but did not explain how he came to that conclusion. Further, he initially testified that he believed the Siams' closing was set for May 10, 2006 and that they were unable to close on that date; however, later in his testimony he admitted that he did not know exactly when the closing date was.

In its findings of fact and conclusions of law, the trial court ruled that the Siams were entitled to the following items of damages: (1) $21,500 for the difference between the sales price to the Siams ($145,450) and the sales price to the third party ($166,950); (2) $500 for the return of the Siams' earnest money deposit; (3) $325 for the return of the Siams' appraisal fee; and (4) $2,510 for the return of the money the Siams paid for the custom change to the home.

Mountain Vista also filed a motion for reconsideration, arguing that the trial court erred in finding that it had breached its contract with the Siams. The trial court denied that motion as well.

Moreover, we note that opposing counsel testified at trial that he billed his client for 56 hours of work through the first day of trial-almost the identical number of hours that Skipworth billed. Although opposing counsel's billing rate was $250 an hour, somewhat lower than Skipworth's billing rate, there is nothing in the record to suggest that Skipworth's higher billing rate was not justified based on his expertise in the field.

We note that Matthews and Cavnar were personal injury and wrongful death cases, but were decided prior to the changes to the Finance Code that expressly allowed for prejudgment interest in personal injury cases; therefore, both cases were decided based on common law principles.

Moreover, the Court has noted that that there are other methods a defendant may use to address a plaintiff's dilatory trial tactics, "such as objecting to the granting of continuances, objecting to the passing of the case, and moving for a special trial setting." Matthews, 721 S.W.2d at 287. In the present case, Mountain Vista made little, if any attempt, to move the case forward, and did not file its first motion to dismiss the Siams' lawsuit until February of 2014, shortly after the Siams retained their new attorney.

At trial, the Siams initially sought a total of $9,890.23 in travel expenses. The Siams concede that this total erroneously included travel expenses they incurred after the breach, which took place on May 8, 2006; the Siams now concede that they were not entitled to any reliance damages after that date.